UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEISHA HAWKINS,<br><br>    Plaintiff,<br><br>    v.<br><br>BERKELEY UNIFIED SCHOOL DISTRICT,<br><br>    Defendant.<br>_____<br>BERKELEY UNIFIED SCHOOL DISTRICT,<br><br>    Counter-Claimant,<br><br>    v.<br><br>JEAN MURRELL ADAMS, *et al.*,<br><br>    Counter-Defendants.<br>_____/ | No. C-07-4206 EMC<br><br><br>**ORDER GRANTING COUNTER-DEFENDANTS' MOTION TO DISMISS**<br><br>**(Docket No. 22)** |

        Plaintiff Keisha Hawkins has filed suit against the Berkeley Unified School District ("District"), alleging that the District denied her minor child (the "Student") a free and appropriate public education ("FAPE") as required by the Individuals with Disabilities Education Act ("IDEA") and seeking review of an ALJ decision, which was partially unfavorable to the Student. In its response to the complaint, the District asserted a counterclaim against Jean Murrell Adams and her law firm, Adams Esq. Adams Esq. represented Ms. Hawkins during the administrative proceedings and represents Ms. Hawkins in the instant litigation. Ms. Adams and Adams Esq. (collectively, "Counter-Defendants") now move to dismiss the counterclaim asserted by the District.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion to dismiss. For the reasons discussed below, the counterclaim is dismissed with prejudice.

## I. FACTUAL & PROCEDURAL BACKGROUND

In her complaint, Ms. Hawkins alleges that the Student was born on December 26, 1993, and is a child with a disability pursuant to the IDEA. *See* Compl. ¶ 4; *see also* 20 U.S.C.A. § 1401(3) (defining "child with a disability"). Under the IDEA, every child with a disability has a right to a FAPE. *See id.* § 1412(a)(1)(A) ("A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive . . . ."). To achieve this goal, the IDEA relies on a cooperative process between parents and schools. *See generally Schaffer ex rel. Schaeffer v. Weast*, 546 U.S. 49, 53 (2005). Central to this cooperative process is the individualized education program ("IEP").

An IEP is created for every disabled student and serves as a road map for the student's education. *See id.* at 53-54. "Each IEP must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." *Id.* at 53. IEPs must be reviewed at least once a year. *See id.*

Parents play a significant role in the IEP process. As the Supreme Court has explained:

> [Parents] must be informed about and consent to evaluations of their child under the Act. [20 U.S.C] § 1414(c)(3). Parents are included as members of "IEP teams." § 1414(d)(1)(B). They have the right to examine any records relating to their child, and to obtain an "independent educational evaluation of the[ir] child." § 1415(b)(1). They must be given written prior notice of any changes in an IEP, § 1415(b)(3), and be notified in writing of the procedural safeguards available to them under the Act, § 1415(d)(1). If parents believe that an IEP is not appropriate, they may seek an administrative "impartial due process hearing." § 1415(f).

*Id.* If the parents of a disabled student do not prevail at the administrative due process hearing, they may seek, as Ms. Hawkins does here, review through a civil action in state or federal court. *See* 20 U.S.C. § 1415(i)(2).

In the instant case, Ms. Hawkins sought an administrative due process hearing on the basis that the District had denied the Student a FAPE. The due process hearing was held before Judge John A. Hawley (an ALJ) in April and May 2007. *See* Compl. ¶ 6; Rolen Decl., Ex. A (administrative decision, dated May 18, 2007) [hereinafter "Decision"]. The specific issues before Judge Hawley were as follows:

(1) Whether the District denied the Student a FAPE by failing to conduct annual IEP team meetings due on September 29, 2006, to the present;

(2) Whether the District denied the Student a FAPE by moving him from a special day class to general education without Ms. Hawkins's consent;

(3) Whether the District denied the Student a FAPE by failing to provide placement and services to meet his unique needs and reasonably calculated to provide some educational benefit in conformity with the IEP;

(4) Whether the District denied the Student a FAPE by failing to timely produce his educational records to Ms. Hawkins; and

(5) Whether the District denied the Student a FAPE by failing to provide Ms. Hawkins with prior written notice regarding the Student's change of placement, failing to hold the annual IEP meeting, and failing to design an educational placement satisfactory under the IDEA.

*See* Decision at 2.

Judge Thawley found that the District prevailed on Claims 2, 4, and 5 and that the Student prevailed on portions of Claims 1 and 3. *See* Decision at 16. As to Claim 1, the ALJ found that the District violated the Student's right to a FAPE but only during the six-week delay between September 29, 2006, and November 13, 2006, when no IEP meeting was conducted. *See* Decision at 14 (Legal Conclusion ¶ 12). The ALJ limited the period of the violations because he found that Ms. Hawkins unreasonably refused to participate in the IEP meeting proposed by the District. *See* Decision at 5 (Factual Finding ¶ 9). As to Claim 3, the ALJ found that the Student's placement in school was reasonably calculated to provide some educational benefit and that the District violated Student's right to a FAPE only insofar as it failed to provide speech and language training for approximately eleven weeks between August 31, 2006, and November 13, 2006. *See* Decision at

14-15 (Legal Conclusions ¶¶ 14-15). Again, the time period of the delay was limited because the ALJ found Ms. Hawkins' refusal to participate in the IEP meeting was unreasonable. For purposes of this opinion, it is notable that, although the Student did prevail on portions of Claims 1 and 3, the District contends it had conceded the basis for these partial claims. *See* Decision at 16; *see also* Decision at 3 (discussing two concessions).

On August 16, 2007, Ms. Hawkins filed a complaint in this Court, reiterating the allegations that she made in the administrative due process hearing. In her complaint, Ms. Hawkins alleges that the ALJ erred insofar as he found in favor of the District and requests that this Court reverse the ALJ's findings. *See* Compl. ¶ 32. Ms. Hawkins seeks (1) independent assessments for the Student, (2) an IEP with appropriate notice to her, (3) compensatory education and services, and (4) attorney's fees and costs pursuant to 20 U.S.C. § 1415(i).

On September 17, 2007, the District responded to Ms. Hawkins's complaint. As part of its response, the District included a counterclaim for attorney's fees against Ms. Adams and Adams Esq., asserting that the District was the prevailing party on Claims 2, 4, 5 and on portions of Claims 1 and 3 and that Counter-Defendants had filed an administrative complaint that was frivolous, unreasonable, or without foundation or presented an administrative complaint for an improper purpose. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(II)-(III) (providing that a court may, in its discretion, award reasonable attorney's fees to a prevailing party who is a state or local educational agency against the attorney of a parent "who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation" or "if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation"). In support of its counterclaim, the District points to portions of the ALJ decision, in which the ALJ indicated that Ms. Adams had (1) unreasonably refused to cooperate with the District in scheduling the IEP and (2) improperly failed to review with Ms. Hawkins the administrative complaint which contained demonstrably false allegations.

After the District filed its counterclaim for fees, Counter-Defendants moved the Court for dismissal of the counterclaim with prejudice. This is the motion currently pending before the Court.

## II. <u>DISCUSSION</u>

In their motion, Counter-Defendants argue for dismissal on two grounds: (1) for improper joinder under Federal Rule of Civil Procedure 13 and (2) for failure to state a claim pursuant to Rule 12(b)(6). Alternatively, Counter-Defendants ask for a more definite statement pursuant to Rule 12(e).

A. <u>Improper Joinder</u>

Counter-Defendants first move to dismiss on the basis of improper joinder under Rule 13. Rule 13 permits the assertion of a counterclaim "against an opposing party." Counter-Defendants argue that under Rule 13, a defendant may assert a counterclaim only against an existing party in the litigation who has already asserted a claim against the defendant. Because only Ms. Hawkins and not Counter-Defendants was an original plaintiff in this litigation, Counter-Defendants maintain that they cannot be joined in a counterclaim under Rule 13.

The Court agrees. "In order for a defending party to assert a compulsory counterclaim, the claim must be raised against an existing party." Moore's Fed. Prac. & Proc. § 13.90[2][b] (3d ed. 2007); *see also Rainbow Mgmt. Group Ltd. v. Atlantis Submarines Haw., L.P.*, 158 F.R.D. 656, 660 (D. Haw. 1994) (holding that co-parties become opposing parties within the meaning of Rule 13(a) *after* one party pleads a crossclaim against the other). Counter-Defendants are not "opposing parties" under Rule 13.

To be sure, Rule 13(h) permits a party to join additional parties (who are not original to the litigation) to a counterclaim or crossclaim, *see* Fed. R. Civ. P. 13(h) ("Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim."). However, the courts have held that Rule 13(h) requires that any such joinder of a new party be anchored to a counterclaim or cross-claim against an original party. A Rule 13(h) "counterclaim or cross-claim may not be directed solely against persons who are not already parties to the original action but must involve at least one existing party." 6 Wright & Miller, Fed. Prac. & Proc., Civ. 2d § 1435, at 270-71 (1990). *See, e.g.*, *Brown v. Int'l Union, United Auto, etc.*, 85 F.R.D. 328, 333 (W.D. Mich. 1980) (holding that any attempt to add a new person as a cross-defendant under 13(h) is improper if he is the sole cross-defendant because "it is well established . . . that the cross-claim must include as a cross-defendant

5

at least one existing co-party"); *United States v. Techno Fund, Inc.*, 270 F. Supp. 83, 85 (S.D. Ohio 1967) (denying defendant's motion to join a nonparty and construing Rule 13(h) to "mean that an additional party may not be brought in for purposes of a counterclaim where the counterclaim is directed solely against the new party and asserts no rights against the original plaintiff"). Here the District's counterclaim names only Adams and Adams Esq. and does not join any of the named Plaintiffs. Joinder is therefore improper under Rule 13(h).

The District cites *Taylor P. v. Missouri Department of Elementary and Secondary Education*, No. 06-4254-CV-C-NKL, 2007 U.S. Dist. LEXIS 59570 (W.D. Mo. Aug. 14, 2007), in support of its position, but its reliance on the case is misplaced. In *Taylor P.*, the court permitted the defendant school district to assert a counterclaim against the former attorneys of the student's parents but only because the counterclaim was brought against not only the attorneys but also the parents (original plaintiffs), and therefore joinder was proper under Rule 13(h). *See id.* at *2, 8-9.

At the hearing, the District argued for the first time that the amendment of the IDEA in December 2004 should be construed to override the joinder rules provided for by Rule 13. The District noted that, prior to the amendment, attorney's fees could only be sought by a prevailing parent. With the amendment, fees can now be sought by the prevailing party, be it the plaintiff parent or the defendant educational agency. The educational agency may seek fees against either the parent *or* the parent's attorney. According to the District, since the IDEA now allows a claim for fees solely against the parent's attorney -- *i.e.*, it does not require a claim against both the parent and the parent's attorney -- then the District should not be required to assert both a claim against Ms. Hawkins and her attorneys in order to have a proper joinder under Rule 13.

While the District's position has a logical appeal, it has cited no case law to support its proposition. More important, the amendment to the IDEA is silent on the issue. The Court is reluctant to imply an override of Rule 13 where Congress could have, but did not, include any qualifying language about joinder procedures in the legislation, particularly since the requirements of Rule 13(h) are longstanding. Finally, even though joinder of Counter-Defendants may not be possible under Rule 13 in the instant case, the District is not necessarily without any relief. The

District could initiate a separate suit against Ms. Adams and Adams Esq. for fees pursuant to the IDEA and then seek to have that suit related or consolidated with the instant case.

The Court, therefore, grants Counter-Defendants' motion to dismiss because they were not properly joined to the case at bar pursuant to Rule 13. Although dismissal is warranted on this basis alone, the Court still addresses the merits of Counter-Defendants' contention that, as a matter of law, the District has failed to state a claim for relief because, if so, this would entitle Counter-Defendants to a dismissal with prejudice.

B. <u>Failure to State a Claim</u>

A complaint may be dismissed for failure to state a claim for which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *see also Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). In its analysis, a court must take "all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9thCir. 1995). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).

Here, Counter-Defendants argue that, as a matter of law, the District's counterclaim fails to state a claim for relief because, during the administrative proceedings, the Student prevailed on at least some of the claims. In response, the District contends that it was the prevailing party on the vast majority of claims and therefore is entitled to fees under 20 U.S.C. § 1415(i)(3)(B)(i). The basic question for the Court, therefore, is whether an educational agency in an IDEA case may be awarded fees if it is only partially successful.

    1. *Christiansburg* <u>Standard</u>

In order to address this specific question, the Court must, as a preliminary matter, address a dispute between the parties over the interpretation of the IDEA's fee provision. Under the IDEA, a court may award attorney's fees to a prevailing educational agency "against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation." *Id.* § 1415(i)(3)(B)(i)(II). A court may

also award fees to a prevailing educational agency "against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." *Id.* 1415(i)(3)(B)(i)(III).

As is clear from the language above, an educational agency is not automatically entitled to fees simply because it prevails in an IDEA case; rather, something more must be shown -- *e.g.*, that the parent's administrative complaint was frivolous, unreasonable, or without foundation. In this respect, the IDEA fee provision is similar to fee provisions in civil rights cases. The Supreme Court has held that, in civil rights cases, fees shift in favor of a prevailing defendant only where the "plaintiff's action was frivolous, unreasonable, or without foundation," even where the fee-shifting statute does not explicitly include that requirement. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). In *Christiansburg*, the Court explained that this strict standard does not apply to fee awards for prevailing plaintiffs because (1) "the plaintiff is the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority'" and (2) "when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law." *Id.* at 418. These policy considerations are inapplicable in the case of a prevailing defendant. *See id.* at 419. The Supreme Court further acknowledged the risk of discouraging civil rights suits by cautioning district courts to "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a plaintiff be sure of ultimate success. *Id.* at 421-22; *see also Mitchell v. Office of LA County Superintendent of Sch.,* 805 F.2d 844, 847-48 (9th Cir. 1986) (reversing defendant's fee award and holding that courts should award defendants fees only in exceptional circumstances; adding that, in this case, the "chilling effect upon civil rights plaintiffs would be disproportionate to any protection defendants might receive").

Notably, the legislative history for the IDEA indicates that its fee provision was in fact intended to codify the *Christiansburg* standard. In the Congressional Record for the December 2004 amendment of the IDEA, Senator Kennedy took note of the "important issue of attorney's fees" and

referred to the "language of the conference report that provided the explanation for the attorney's fees language," stating that "the conferees intend[ed] to codify the standards set forth in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978)." 150 Cong. Rec. S 11543; 150 Cong. Rec. S 11654. Senator Kennedy specifically recited the *Christiansburg* standard, affirming that "attorney's fees may only be awarded to defendants in civil rights cases where the plaintiff's claims are frivolous, without foundation or brought in bad faith." 150 Cong. Rec. S 11543; 150 Cong. Rec. S 11654; *see also* 150 Cong. Rec. H 10006 (stating that "the Conferees intend to codify the standards set forth in *Christiansburg*"). And the Second Circuit has explicitly held that, in an IDEA case, "[w]ith respect to prevailing-defendant educational agencies, . . . Congress explicitly adopted the standard applicable to prevailing defendants in civil rights cases established in *Christiansburg . . . .*" *Mr. L. v. Sloan*, 449 F.3d 405, 407 n.2 (2d Cir. 2006). The Court therefore applies the *Christiansburg* standard to the counterclaim herein.

2. Complete v. Partial Victory

As a preliminary matter, the Court must address an argument that the District raised for the first time at the hearing on Counter-Defendants' motion to dismiss. At the hearing, the District contended that it actually obtained a complete victory at the administrative level, and not a partial one, because even though the Student obtained partial relief for Claims 1 and 3 of the administrative complaint, *see* Part I, *supra*, the District had conceded those partial claims, as the ALJ recognized in his decision. This argument made by the District is related to another argument that was presented in its opposition brief to the motion to dismiss, *i.e.*, that the relief the Student obtained at the administrative level was too insignificant to entitle Ms. Hawkins to prevailing parent status.

The Court does not find either argument persuasive. As to the latter contention, a plaintiff in a civil rights case need not prevail on every issue in the action to achieve prevailing party"status for attorney's fees. *See Texas State Teachers Ass'n v. Garland Independent Sch. Dist.*, 489 U.S. 782 (1989) (holding that a plaintiff need not succeed on the entirety of her action in order to be a prevailing party entitled to attorneys fees under § 1988). Rather, the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Id.* at 792-93; *see also Estate of Farrar v. Cain*, 506 U.S. 103, 107, 111-12 (1992) (stating that a party prevails

"when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff"). The key is whether there is a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001). Here, the ALJ found that the Student partially prevailed on some of the claims and awarded the Student twenty-two hours of compensatory speech and language theory, which constitutes actual relief modifying the District's behavior in a way that directly benefits him.

As to the first argument -- *i.e.*, that the District obtained a complete victory since it had already conceded the claims on which the Student prevailed -- the record does not reflect when the District made its concessions. The District has provided no evidence, *e.g.*, that it conceded the matters on which the Student prevailed prior to the filing of the administrative complaint. In fact, at the hearing on the motion to dismiss, the parties did not dispute that the District's initial response to the administrative claim was to deny it and that the concessions were not made until after the administrative hearing commenced. In short, it took the filing of the administrative complaint to obtain any concession from the District. The Court therefore rejects the District's characterization of its victory as a complete, rather than partial, one.

3. Partial Success and *Hensley*

Counter-Defendants' primary argument is that, as a matter of law, the District cannot recover fees because the Student prevailed, at least in part, at the administrative hearing. However, Counter-Defendants have not cited any case holding that, as a matter of law, a defendant is barred from obtaining fees where a plaintiff is partially successful. Likewise, the District has similarly failed to cite any authority demonstrating that a partially prevailing defendant may in fact be awarded fees under the IDEA. In the absence of directly applicable case law and in light of the fact that the attorney fee provision of the IDEA is modeled in part upon other civil rights fee statutes, *see* 150 Cong. Rec. S 11543; 150 Cong. Rec. S 11654; 150 Cong. Rec. H 10006, the Court finds guidance on this question in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). In *Hensley*, the Supreme Court indicated -- albeit in *dicta* -- that, even where a plaintiff is partially successful, a defendant may still be able to recover fees on plaintiff's unsuccessful claims under 42 U.S.C. § 1988 if such claims are

unrelated to the successful claims and are frivolous.[1] *See id.* at 435. The Court noted that, where a plaintiff is only partially successful, unrelated unsuccessful claims may be treated as if they were raised in separate lawsuits. *See id.* In this regard, "[i]f the unsuccessful claim is frivolous, the defendant may recover attorneys fees incurred in responding to it." *See id.* 435 n.10. Thus, in the instant case, where Ms. Hawkins prevailed in part on Claims 1 and 3, the question is whether those claims are related to claims on which she was unsuccessful -- *i.e.*, Claims 2, 4, and 5.

### 4. Relatedness of Claims

In *Hensley*, the Supreme Court explained that, where a plaintiff obtains partial relief, a two-part analysis must be applied. "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he prevailed? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* at 434. If the claims are unrelated, "the final fee award may not include the time expended on the unsuccessful claims." *Thorne v. El Segundo,* 802 F.3d 1131, 1141 (9th Cir. 1986). If the claims are related, "the court must apply the second part of the analysis, in which the court evaluates the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *Id.* (quoting *Hensley*, 461 U.S. at 435). Hence, the issue of relatedness in cases involving split or partial victories is an integral part of the analysis under *Hensley*.

The Court noted in *Hensley* that "there is no certain method of determining when claims are 'related' or 'unrelated.'" *Id.* at 437 n.12. *See also Thorne*, 802 F.2d at 1141 ("The test for relatedness is not precise."). Typically, the Court explained, related claims "will involve a common

---

[1] This Court has found no case in which a court has applied the *dicta* of footnote 10 of *Hensley* and granted attorney's fees to a defendant in a split victory case. Although there is some case law supporting a claim-by-claim analysis in determining whether individual unsuccessful claims were frivolous, all such cases are in the context of a complete defense victory. *See, e.g., Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1058 (9th Cir. 2006) (summary judgement granted for defendant on all claims and holding fees permissible on frivolous claims); *Ward v. Hickey*, 996 F.2d 448, 455 (1st Cir. 1993) (judgment entered for defendants based on special questions to jury but remanded to determined which claims were frivolous and could support defense fees); *and Quintana v. Jenne*, 414 F.3d 1306, 1309 (11th Cir. 2005) (summary judgment granted for defendant on both plaintiff's claims but remanded to ensure fee award based only on frivolous claim; *cf. Marquart v. Lodge 837, Intl Ass'n of Machinists and Aerospace Workers*, 26 F.3d 842, 851 (8th Cir. 1994) (discussing the case law and policy of the standards of prevailing party for plaintiffs and defendants under Title VII and declining to import the broader plaintiff standard for defendant because as a matter of public policy a defendant should not enjoy a plaintiff's standard for achieving "prevailing party" status).

core of facts or will be based on related legal theories." *Hensley*, 461 U.S. at 435. In these cases, an attorney's time is "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," and "[s]uch a lawsuit cannot be viewed as a series of discrete claims." *Id.*

The Ninth Circuit applied *Hensley*'s test of relatedness liberally, holding that claims are "related if either the facts *or* the legal theories are the same." *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003) (emphasis in original). The Ninth Circuit has also stated that, in assessing the issue of relatedness, a court should consider "whether the relief sought on the unsuccessful claim 'is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.'" *Thorne*, 802 F.2d at 1141 (quoting *Mary Beth. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir. 1983)). Other factors informing the issue of relatedness are "whether the unsuccessful claims were presented separately, whether testimony on the successful and unsuccessful claims overlapped, and whether evidence concerning one issue was material and relevant to other issues." *Id.*

As noted above, of the five issues at the due process hearing, the ALJ found that Hawkins prevailed on portions of Claims 1 and 3. Claim 1 asserted the District denied Student a FAPE by not conducting annual IEP team meetings due on September 29, 2006. Claim 3 asserted the District denied Student a FAPE by failing to provide placement and services to meet his unique needs and reasonably calculated to provide some educational benefit in conformity with the IEP. The District's claim for attorney's fees can proceed only if Claim 2, 4, or 5 is unrelated to *both* Claims 1 and 3. In light of the policies articulated by the Supreme Court in *Christiansburg* -- *e.g.*, the risk of "chilling" plaintiffs' suits if fee awards were liberally awarded to prevailing defendants -- the Court concludes that doubt as to relatedness should be resolved in favor of civil rights plaintiffs and their counsel.

        a.     Claim 5

Claim 5 asserted the District procedurally denied the Student a FAPE by failing to provide Ms. Hawkins with prior written notice regarding Student's change of placement, failing to hold the annual IEP meeting, and failing to design an educational placement satisfactory under the IDEA.

12

Clearly, Claim 5 overlaps with both Claims 1 and 3. It asserts that the District failed to hold the annual IEP meeting and failed to design a satisfactory educational placement program for Student, which are the issues raised in Claims 1 and 3. Notice is integrally related to the Plaintiff's ability to exercise the rights at issue in Claims 1 and 3. Moreover, if no substantive violations of Claims 1 and 3 were found, Claim 5 would for practical purposes be moot. Accordingly, the claims are transactionally related and involve overlapping evidence.

### b. Claim 2

Claim 2 asserted the District denied Student a FAPE by moving him from a special day class to general education without Hawkins' consent. Claims 2 and 3 are related because the adequacy of the education and services that the Student received (at issue in Claim 3) was informed in part by his move from a special day class to general education (at issue in Claim 2). Claims 2 and 3 are also related as both claims concern the issue of placement. Determining whether, as Ms. Hawkins asserts in Claim 2, her consent was needed for the move from a special day class to general education requires a determination of whether this was actually a "change in placement." Claim 3 is related as it asserts that the Student was denied a FAPE, in part, by failing to provide appropriate placement. *See Burston v. Virginia*, 595 F. Supp. 644, 650 (E.D. Va. 1984) (finding that claims were related as they were "part and parcel of a series of events between plaintiffs and defendants, occurring within a relative short time span in one particular setting"). Were Claim 3 found to be without merit, Claim 2 would be moot for practical purposes. Again there is an overlap in evidence, and the same general course of conduct was at issue. *See Thorne*, 802 F.2d at 1141.

### c. Claim 4

In Claim 4, Ms. Hawkins sought to remedy a procedural violation, asserting that the District denied the Student a FAPE by failing to completely and timely produce his education records upon her request. Claim 4 is related to Claim 3 because Ms. Hawkins needed the Student's records in order to evaluate whether he was getting the appropriate educational and related services that conformed to his IEP. *See Board of Educ. v. Rowley*, 458 U.S. 176, 189 (1982) (noting that a student's substantive right to a FAPE is ensured by the state's obligation to "adopt procedures which

would result in individualized consideration of and instruction for each child"). Hence, the same substantive rights were affected.

Furthermore, that Claim 4 is related to Claim 1 is underscored by the ALJ's decision. In his decision, Judge Thawley found that, under Claim 4, the District's initial production of records was not complete and may have been untimely, but he held that this was not a significant procedural error and did not impede Ms. Hawkins's opportunity to participate in the decision-making process because of her unreasonable refusal to conduct an IEP meeting, the same reason why the ALJ limited relief on Claim 1. *Cf. Johnston v. Harris Country Flood Control Dist.*, 869 F.2d 1565, 1582 (5th Cir. 1989) (finding that the plaintiff's successful retaliation claim and unsuccessful age and handicap discrimination claims were related and "'integrally bound up'" because the defendants had raised plaintiff's age and infirmity to defend against the retaliation claim"). Hence, a common core of facts underlie both Claims 1 and 4. *See Hensley*, 461 U.S. at 435; *Thorne*, 802 F.2d at 1141.

d. Summary

Accordingly, the Court concludes that each of the claims on which the District was successful at the administrative level (*i.e.*, Claims 2, 4, and 5) was related to at least one claim, if not both, on which the Student was partially successful (*i.e.*, Claim 1 and 2). Because the unsuccessful claims are related to the successful claims, the District may not, as a matter of law, recover fees under *Hensley*. Its counterclaim for fees must therefore be dismissed with prejudice.[2]

///
///
///
///
///
///
///

---

[2] Even if the District did successfully state a counterclaim for fees, it would be with respect to Adams Esq. only, and not Ms. Adam herself. The counterclaim contains no substantive allegations against Ms. Adams in her individual capacity. Thus, dismissal as to Ms. Adams in her individual capacity is further warranted on this ground.

14

### III. CONCLUSION

For the foregoing reasons, the Court grants Counter-Defendants' motion to dismiss. The dismissal shall be with prejudice because even if Counter-Defendants were properly joined to this case, the District has, as a matter of law, failed to state a claim for attorney's fees.

This order disposes of Docket No. 22.

IT IS SO ORDERED.

Dated: March 11, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge