1

2

3

4

5                        UNITED STATES DISTRICT COURT

6                        NORTHERN DISTRICT OF CALIFORNIA

7

8    KEISHA HAWKINS,                              No. C-07-4206 EMC

9              Plaintiff,

10        v.                                      **ORDER GRANTING PLAINTIFF'S
                                                  MOTION FOR ATTORNEY'S FEES
11   BERKELEY UNIFIED SCHOOL DISTRICT,            AND COSTS; GRANTING IN PART
                                                  AND DENYING IN PART
12             Defendant.                         DEFENDANT'S MOTION TO STRIKE;
     _____             DENYING DEFENDANT'S
13                                                SUPPLEMENTAL MOTION TO
     BERKELEY UNIFIED SCHOOL DISTRICT,            STRIKE; FINDING MOOT
14                                                PLAINTIFF'S MOTION TO STRIKE;
               Counter-Claimant,                  AND GRANTING PLAINTIFF'S
15                                                MOTION TO DISMISS
          v.
16                                                (Docket Nos. 60, 66, 77, 82, and 83)**
     JEAN MURRELL ADAMS, *et al.*,
17
               Counter-Defendants.
18   _____/

19

20        Plaintiff Keisha Hawkins filed suit against Defendant Berkeley Unified School District

21   pursuant to the Individuals with Disabilities Education Act ("IDEA"), asserting, *inter alia*, that her

22   son (hereinafter "Student") was denied a free appropriate public education ("FAPE").  After the

23   Court dismissed the District's counterclaim for attorney's fees with prejudice, the parties settled the

24   lawsuit, leaving only the issue for attorney's fees for the Court's resolution.

25        Currently pending is Ms. Hawkins's motion for fees and costs.  In the motion, Ms. Hawkins

26   asks to be awarded $60,441 for fees and costs related to the administrative proceeding (representing

27   approximately 190 hours of time) and $70,594.90 for fees and costs related to this civil action

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   (representing approximately 220 hours of time).  *See* Mot. at 2.[1]  In the reply brief, Ms. Hawkins

2   asks for an additional $11,742, representing the fees incurred "in pursuing [the fee] award in [this]

3   proceeding."  Reply at 11 (representing approximately 34 hours of time).  The total amount sought is

4   thus $142,777.90.

5       Having considered the parties briefs and accompanying submissions, as well as the oral

6   argument of counsel, the Court hereby **GRANTS** Ms. Hawkins's motion for fees and costs.  The

7   Court also **GRANTS** in part and **DENIES** in part the District's motion to strike and **DENIES** the

8   District's supplemental motion to strike.  Because the Court is denying the supplemental motion to

9   strike, Ms. Hawkins's motion to strike is moot.  Finally, the Court **GRANTS** Ms. Hawkins's motion

10  to dismiss.

## I.   FACTUAL & PROCEDURAL BACKGROUND

12      The IDEA requires state and local educational agencies that are receiving assistance to

13  establish and maintain procedures "to ensure that children with disabilities and their parents are

14  guaranteed procedural safeguards with respect to the provision of a free appropriate public education

15  by such agencies."  20 U.S.C. § 1415(a).  One of those safeguards is the right to an impartial due

16  process hearing upon a complaint regarding the provision of a FAPE.  *See id.* § 1415(f).  The

17  findings and decision made by the hearing officer may ultimately be appealed and reviewed by a

18  federal court.  *See id.* § 1415(i)(2).

19      In the instant case, a due process hearing request was made on behalf of the Student on

20  November 1, 2006.  *See* ALJ Decision at 1 (located at Docket No. 22, Ex. A); *see also* Adams Decl.

21  ¶ 8.  Actions or omissions by the District in August 2006 and thereafter were challenged.  The due

22  process hearing ultimately took place in early April 2007.  *See* ALJ Decision at 1.

23      Prior to the hearing, the District made a settlement offer to the Student pursuant to the IDEA.

24  *See* Rolen Decl., Ex. D (settlement offer letter, dated 3/23/2007).  The District offered to provide the

25  Student with 100 hours of compensatory education, as well as four weeks at a special summer camp,

---

28  [1] "Mot." refers to Ms. Hawkins's motion for fees and costs; "Opp'n" and "Reply" are the briefs related to the same motion.

**United States District Court**
For the Northern District of California

1  and further offered to convene the triennial and annual IEP for the Student within a certain time.

2  Finally, the District offered to pay $500 in attorney's fees to Ms. Hawkins.  *See* Rolen Decl., Ex. D.

3          The settlement offer was rejected and the due process hearing proceeded, as noted, in April

4  2007.  The ALJ issued his decision on May 18, 2007.  *See generally* ALJ Decision.  As reflected in

5  the decision, the District prevailed on three of the claims presented and the Student prevailed on

6  portions of the remaining two claims.  *See* ALJ Decision at 16.  More specifically, the ALJ

7  concluded that the District did not deny the Student a FAPE by (1) moving him from a special day

8  class to a general education classroom without Ms. Hawkins's consent; (2) not timely producing his

9  educational records to Ms. Hawkins and not producing his complete educational records, and (3)

10  failing to provide Ms. Hawkins with a prior written notice regarding the change of his placement to a

11  general education classroom, the failure to hold his annual IEP team meeting, and the failure to

12  design an educational placement to meet his unique educational needs.  The ALJ concluded that the

13  District did deny the Student a FAPE by (1) failing to conduct his annual IEP by September 29,

14  2006, and for the six-week delay until the District scheduled the IEP team meeting on November 13,

15  2006, and (2) failing to provide speech and language therapy from the start of the 2006-2007 school

16  year on August 31, 2006, until November 13, 2006, when the District was ready to conduct the IEP

17  team meeting.  The Student was awarded 22 hours of compensatory education.  *See* ALJ Decision at

18  16.  Subsequently, on August 16, 2007, Ms. Hawkins filed the instant lawsuit, challenging the ALJ's

19  decision.  *See* Docket No. 1 (complaint).

20          In its response to the complaint, the District asserted a counterclaim for attorney's fees.  The

21  counterclaim was not asserted against either Ms. Hawkins or the Student but rather against the law

22  firm and attorney that had represented them, *i.e.*, the Adams law firm and Jean Murrell Adams.  The

23  Adams law firm and Ms. Adams and moved to dismiss the counterclaim, *see* Docket No. 22 (motion,

24  filed on 11/21/2007), and the Court granted the motion with prejudice.  *See* Docket No. 39 (order,

25  filed on 3/11/2008).

26          In June 2008, the parties informed the Court through a joint case management statement that

27  they were settling the case, leaving only the issue for attorney's fees for the Court's resolution.  *See*

28  Docket No. 49 (joint case management statement); *see also* Docket No. 51 (joint case management

**United States District Court**
For the Northern District of California

1   statement, filed on 7/30/2008).  Under the settlement agreement, the District agreed to provide the

2   Student with fifty hours of speech and language therapy and seventy-five hours of tutoring.  *See*

3   Settlement Agreement ¶ II.A.  In addition, the District agreed "to conduct a psycho-educational

4   assessment of [the] Student, which will include the NEPSY-II assessment instrument, to be

5   conducted by a District psychologist who holds a Ph.D."  Settlement Agreement ¶ II.A.

6                                          **II.    DISCUSSION**

7   A.      Motions to Strike

8           The District has moved to strike certain portions of Ms. Hawkins's motion for fees and costs.

9   After the Court held a hearing on the motion, the District filed a supplemental motion to strike

10  portions of Ms. Hawkins's reply brief filed in support of the fee-and-cost motion.  Ms. Hawkins

11  moved to strike the supplemental motion.

12          The Court **DENIES** the supplemental motion to strike as untimely, which thereby moots Ms.

13  Hawkins's motion to strike.  The hearing on Ms. Hawkins's fee-and-cost motion was held on

14  October 29, 2008.  At the conclusion of the hearing, the Court deemed the matter submitted (with

15  one exception -- *i.e.*, permitting the District to file an additional case authority).  The supplemental

16  motion was not filed until some twelve days later.  No reason was given as to why the supplemental

17  motion to strike could not have been filed prior to the hearing on October 29.  In any event, the

18  Court is able to determine on its own whether -- as the District argues in its supplemental motion to

19  strike -- claims made in the reply brief are supported by evidence.

20          As for the timely filed initial motion to strike, the Court rules as follows.

21          First, the District moves to strike those portions of the Adams and Garcia declarations that

22  claim that the District engaged in "'ongoing and egregious delays'" during both the administrative

23  proceeding and the federal litigation.  The motion is **DENIED**.  The attorney declarations provide

24  specific examples of how the District allegedly delayed and constitutes admissible evidence.

25          Second, the District moves to strike Ms. Hawkins's references to the decision by the ALJ.

26  The motion is **DENIED**.  First, the decision is already part of the record because of

27  Counterdefendants' motion to dismiss the District's counterclaim.  *See* Docket No. 22, Ex. A

28  (decision, attached to motion).  Second, the District has made the decision part of the record now by

1    asking the Court to take judicial notice of the ALJ's decision.  *See* Def.'s RJN, Ex. C (ALJ

2    decision).

3           Third, the District has moved to strike that part of the fee motion that discusses the

4    settlement agreement between the parties.  The motion is **DENIED**.  Contrary to what the District

5    argues, Ms. Hawkins is not relying on the settlement agreement in violation of Federal Rule of

6    Evidence 408.  That is, she is not using the settlement agreement to prove the District's liability for

7    the underlying IDEA claim.  Moreover, as a practical matter, the Court must know the terms of the

8    settlement agreement in order to determine whether, *e.g.*, Ms. Hawkins is the prevailing party,

9    whether the results she obtained in the civil action were more favorable than the settlement offer

10   made by the District, and whether there should be a fee reduction based on limited success -- all

11   defenses affirmatively raised by the District.  Any claim that the settlement agreement cannot be

12   considered has, at this juncture, been waived.

13          Fourth, the District has moved to strike that part of the fee motion that discusses the

14   Student's placement.  *See* Mot. at 6.  The motion is **GRANTED**.  As the District points out, there is

15   no evidence to back up the claims regarding the Student's placement.

16          Finally, the District has moved to strike that part of the fee motion that mentions the District

17   receiving, during the mediation, an itemized invoice from Ms. Hawkins regarding her attorney's fees

18   (*i.e.*, $7,500).  The motion is **GRANTED**.  As the District points out, the IDEA provides that

19   "[d]iscussions that occur during the mediation process shall be confidential and may not be used as

20   evidence in any subsequent due process hearing or civil proceeding."  20 U.S.C. § 1415(e)(2)(B).

21   Moreover, there is no evidence about the alleged $7,500 invoice.  The invoice is not mentioned in

22   either attorney declaration.  Granting the motion to strike will not harm Ms. Hawkins's case as she

23   can still argue that the District's settlement offer, which included an attorney fee payment of $500,

24   was patently inadequate.  For example, the Court can still look at the billing records and see that, by

25   the date of the settlement offer, approximately $9,000 had been "billed."  *See* Adams Decl., Ex. A

26   (billing records).

27

28

United States District Court
For the Northern District of California

B.      <u>Statutory Fee-Shifting</u>

        The IDEA contains a specific fee-shifting provision.  It states in relevant part that, "[i]n any action or proceeding brought under this section [*i.e.*, 20 U.S.C. § 1415], the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability."[2]  20 U.S.C. § 1415(i)(3)(B)(i)(I).  There is no dispute that a prevailing parent may obtain fees incurred in the administrative proceeding as well as fees incurred in the civil action.  *See A.R. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 75 (2d Cir. 2005) ("In the context of the IDEA, 'proceeding' refers to, or at least includes, an administrative proceeding."); *Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1026 (9th Cir. 2000) ("The parties do not dispute that, under § 1415(i)(3)(B), prevailing parents can recover attorney fees that they expended in an impartial due process hearing.").

        Under the IDEA, however, attorney's fees and related costs are prohibited for certain services.  For example:

> Attorney's fees and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if
>
> (I)    the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
>
> (II)   the offer is not accepted within 10 days; and
>
> (III)  the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D)(i).  Notwithstanding the above, there is no prohibition on fees and costs if the parent "was substantially justified in rejecting the settlement offer."  *Id.* § 1415(i)(3)(E).

        In addition to the above, fees and costs may be reduced in certain circumstances.  For example, fees and costs may be reduced if

---

        [2] Only a court, and not an administrative hearing officer, has the authority to award fees.  *See Moore v. District of Columbia*, 907 F.2d 165, 170 (D.C. Cir. 1990).

United States District Court

For the Northern District of California

1

(i)    the parent, or the parent's attorney, during the course of the action or proceeding unreasonably protracted the final resolution of the controversy;

2

3

(ii)   the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience; [or]

4

5

(iii)  the time spent and legal services furnished were excessive considering the nature of the action or proceeding . . . .

6

7   *Id.* § 1415(i)(3)(F).  However, no reduction may be made for any of the above reasons "if the court

8   finds that the State or local educational agency unreasonably protracted the final resolution of the

9   action or proceeding or there was a violation of this section."  *Id.* § 1415(i)(3)(G).

10  C.    <u>Administrative Proceeding v. Civil Action</u>

11          As a preliminary matter, the Court takes note that the District has opposed Ms. Hawkins's

12  motion by posing -- with one exception -- separate and distinct challenges to the fees and costs

13  incurred in the administrative proceeding and to the fees and costs incurred in the civil action.[3]  In

14  other words, the District has compartmentalized the administrative proceeding from the civil action.

15          The District appears to have done this in order to take advantage of some of the IDEA

16  provisions that either prohibit or reduce attorney's fees and costs.  For example, by

17  compartmentalizing the administrative proceeding from the civil action, the District may focus on

18  the poor results that Ms. Hawkins obtained at the administrative level (*i.e.*, only 22 hours of

19  compensatory education for the Student).  The results obtained at the administrative level are

20  certainly less favorable than the settlement offer that the District made prior to the administrative

21  hearing, *see* Rolen Decl., Ex. D (settlement offer) (offering 100 hours of compensatory education);

22  therefore, the District may argue that fees and costs incurred after its settlement offer should be

23  excluded pursuant to § 1415(i)(3)(D)(i).  Moreover, the results obtained at the administrative level

24  are far less favorable than the relief sought by Ms. Hawkins in her administrative complaint, *see*

25  Def.'s RJN, Ex. A (administrative complaint) (asking for, *inter alia*, 300 hours of compensatory

26  education), thus giving the District the opportunity to seek a reduction based on limited success

27  _____

28          [3] The one exception is the lodestar -- *i.e.*, the District argues that, for both the administrative proceeding and the civil action, the hourly rates and the number of hours are unreasonable.

7

**United States District Court**
For the Northern District of California

1   pursuant to *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and its progeny.  Finally, by

2   compartmentalizing the administrative proceeding from the civil action, the District may also argue

3   that Ms. Hawkins was not the prevailing party in the civil action.

4           The District, however, has not provided any authority to support this approach.  While there

5   appears to be little case law directly on point, what little authority there is under the IDEA does not

6   support such a compartmentalized approach.  *See Troy Sch. Dist. v. Boutsikaris*, 317 F. Supp. 2d

7   788, 792, 795-96, 799-800 (E.D. Mich. 2004) (determining whether parents were the prevailing

8   party based upon the results of the civil action only; also looking at the issue of parents' limited

9   success based on the results of the civil action only; only looking at administrative proceeding and

10  civil action separately to determine what reductions to fees and costs there should be based on the

11  limited success of parents); *cf. M.L. v. Federal Way School District*, 401 F. Supp. 2d 1158, 1163-64

12  (W.D. Wash. 2005) (rejecting the plaintiff's argument that, in cases that start with an administrative

13  proceeding and continue with a civil action, a settlement offer made before the administrative

14  proceeding "is irrelevant and ought not to be compared against the judicial relief ultimately obtained

15  by [the] [p]arents").

16          Logically, the District's approach makes little sense.  In the context of other fee-shifting

17  statutes, a party who lost at the trial level but obtained a dispositive reversal at the appellate level is

18  often awarded fees for both phases of the case, not just that incurred in the appeal.  *See, e.g.*,

19  *Farbotko v. Clinton County*, 433 F.3d 204, 206, 211 (2d Cir. 2005) (remanding for recalculation of

20  fees by district court but not disputing district court's conclusion that prevailing party was entitled to

21  fees incurred at trial level and on appeal); *cf. Capital Asset Research Corp. v. Finnegan*, 216 F.3d

22  1268, 1273 (11th Cir. 2000) (noting that, "as a practical matter, the identity of the prevailing party

23  could not be ascertained until after the appeal").  Similarly, courts do not appear to

24  compartmentalize the administrative proceeding from the civil action in the context of Title VII,

25  which, like the IDEA, provides that fees and costs may be obtained for the administrative

26  proceeding as well as the civil action.  *See* 42 U.S.C. § 2000e-5(k).  *See generally New York*

27  *Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 65 (concluding that, in Title VII action, attorney's fees

28  may be properly awarded for time spent before a state administrative agency).

United States District Court

For the Northern District of California

1    Finally, the IDEA's settlement offer provision clearly contemplates that results obtained

2    would be measured by the relief "finally obtained" as determined by the final adjudication -- either

3    "the court" or "the administrative hearing officer" if no judicial appeal is taken.  20 U.S.C. §

4    1415(i)(3)(D)(i).

5    Accordingly, in assessing such questions as prevailing party status, the Court will not

6    compartmentalize and examine the administrative and judicial proceedings in isolation.  Instead,

7    such issues will be measured by the ultimate result.

8    D.    Prevailing Party

9    The first issue for the Court is whether Ms. Hawkins is the prevailing party in the civil

10   action.  The parties' settlement agreement provides that "[n]othing in this agreement shall be

11   deemed or construed to confer prevailing party status on either party, and, by entering into this

12   agreement, neither party consents to prevailing party status within the meaning of *Buckhannon Bd.*

13   *& Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600 (2001)."  Settlement

14   Agreement ¶ X.  The Court construes this provision as simply reflecting the parties' agreement that

15   the issue of attorney's fees was left for the Court to resolve and that the fact of settlement did not

16   make Ms. Hawkins a prevailing party *per se*.  In other words, this provision means the District does

17   not waive its defenses and may assert, as it does here, that Ms. Hawkins is not the prevailing party

18   because, *inter alia*, there is a lack of judicial imprimatur.  Conversely, the provision does not

19   constitute a stipulation by Ms. Hawkins that she is not a prevailing party; it does not waive Ms.

20   Hawkins's right to argue, based on the facts of this case and the specific terms of the settlement

21   agreement, that she is a prevailing party.  It is undisputed that the parties contemplated that this

22   Court would rule on the merits of the fee claim.  The Court thus turns to the merits.

23   In *Buckhannon*, the Supreme Court addressed the issue of whether the phrase "prevailing

24   party" "includes a party that has failed to secure a judgment on the merits or a court-ordered consent

25   decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary

26   change in the defendant's conduct."  *Buckhannon*, 532 U.S. at 600.  The Court concluded that the

27   answer was no.  In rejecting the catalyst theory, the Court explained that "[a] defendant's voluntary

28   change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the

**United States District Court**
For the Northern District of California

1  lawsuit, lacks the necessary judicial imprimatur on the change" in the legal relationship between the

2  parties. *Id.* at 605. In so ruling, the Court defined the elements of prevailing party status, a predicate

3  to fee recovery under most fee-shifting statutes.

4      Based on *Buckhannon*, the Ninth Circuit has held that, "in order to be considered a prevailing

5  party . . . , a plaintiff must not only achieve some material alteration of the legal relationship of the

6  parties, but that change must also be judicially sanctioned." *P.N. v. Seattle Sch. Dist.*, 474 F.3d

7  1165, 1171 (9th Cir. 2007) (internal quotation marks omitted).

8      In the instant case, it is clear that there has been a material alteration of the legal relationship

9  of the parties. The settlement agreement entered into by the parties requires the District to provide

10  compensatory education as described above as well as a psycho-educational assessment. *See*

11  *Richard S. v. Department of Dev. Servs. of State of Cal.*, 317 F.3d 1080, 1087 (9th Cir. 2003)

12  (stating that the "settlement agreement materially altered the legal relationship between the parties,

13  because the defendants were required to do something directly benefitting the plaintiffs that they

14  otherwise would not have had to do"). The District argues, however, that that change in the legal

15  relationship between the parties has not been judicially sanctioned -- *i.e.*, there is no judicial

16  imprimatur in the instant case -- and therefore Ms. Hawkins is not the prevailing party. The Court

17  does not agree.

18      A settlement agreement that does not contemplate any judicial enforcement may lack

19  sufficient judicial imprimatur as required by *Buckhannon*. *See P.N.*, 474 F.3d at 1173; *see also*

20  *Carbonell v. INS*, 429 F.3d 894, 899 (9th Cir. 2005) (noting that a litigant is a prevailing party where

21  he or she has "entered into a legally enforceable settlement agreement"). But the Ninth Circuit has

22  held that there is sufficient judicial imprimatur if the settlement agreement provides for a court's

23  retention of jurisdiction to resolve the issue of attorney's fees and costs. *See Richard S.*, 317 F.3d at

24  1088 (stating that, "[t]hrough [the parties'] legally enforceable settlement agreement *and* the district

25  court's retention of jurisdiction [to resolve the issue of fees and costs], plaintiffs obtained a judicial

26  imprimatur that alters the legal relationship of the parties") (internal quotation marks omitted;

27  emphasis added); *Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134 n.5 (9th Cir.

28  2002) (noting that "the parties, in their settlement, agreed that the district court would retain

1    jurisdiction over the issue of attorneys' fees, thus providing sufficient judicial oversight to justify an

2    award of attorneys' fees and costs").  In the instant case, the settlement agreement specifically

3    provides for retention of this Court's jurisdiction to deal with fees and costs.  It states as follows:

4    "The parties agree that any claim they have for attorney's fees arising out of this matter will be

5    submitted to the federal district court for the court's determination and ruling through the court's

6    process for consideration of such claims."  Settlement Agreement ¶ II.B.

7          Moreover, judicial imprimatur also obtains where the settlement agreement provides for the

8    court to retain jurisdiction to enforce the terms of the settlement agreement itself.  *See Jankey v.*

9    *Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) (concluding that there was a sufficient judicial

10   imprimatur where the settlement agreement and the district court's order dismissing the case

11   provided that the court would retain jurisdiction to enforce the agreement).  In the case at bar, there

12   is such a retention provision.  The settlement agreement provides that, "[i]n the event an action [is]

13   filed to enforce this Agreement, such action shall be maintained in Alameda County Superior Court

14   or the United States Federal Court for the Northern District of California."  Settlement Agreement ¶

15   XII.

16         The District protests that the above provision is not a retention provision and that it is merely

17   a venue clause, but its arguments are not persuasive.

18         First, the District argues that the parties could not have contemplated retention of jurisdiction

19   by this Court because the parties agreed to a dismissal with prejudice and, thus, a new action would

20   have to be filed, a fact assertedly inconsistent with the retention of jurisdiction by this Court to

21   enforce the agreement.  The District, however, cites only state law authority to support its argument.

22   *See Hagan Eng'g, Inc. v. Mills*, 115 Cal. App. 4th 1004 (2003).  State law is not controlling here.  In

23   federal court, there may be a dismissal with prejudice pursuant to a settlement agreement and, at the

24   same time, a retention of jurisdiction.  *See, e.g.*, *Jankey*, 537 F.3d at 1128-29 (noting that parties

25   stipulated to dismissal with prejudice but that court retained jurisdiction over enforcement of the

26   settlement agreement).  Thus, there is no internal inconsistency.

27         Second, the operative effect of this provision exceeds that of a venue provision.  It

28   specifically states that an action for enforcement may be maintained in this Court.  But for this

United States District Court

For the Northern District of California

1   provision, this Court would not be able to exercise jurisdiction over any alleged breach of the

2   settlement agreement.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994)

3   (stating that, if a court does not embody a settlement agreement in its dismissal order or retain

4   jurisdiction over the settlement agreement, "enforcement of the settlement agreement is for state

5   courts, unless there is some independent basis for federal jurisdiction").  In other words, absent the

6   settlement agreement in this case, there would be no independent basis for federal jurisdiction.  The

7   settlement agreement thus operates to confer jurisdiction, not merely venue, upon this Court to

8   enforce it.  It thus provides sufficient judicial imprimatur to satisfy *Buckhannon* and its Ninth Circuit

9   progeny.

10         To be sure, the language could have been drafted more clearly.  But the operative effect of

11   the provision is clear.  In any event, even if the provision were deemed ambiguous, *see Dore v.*

12   *Arnold Worldwide, Inc.*, 39 Cal.4th 384, 391 (2006) (stating that "'[a]n ambiguity arises when

13   language is reasonably susceptible of more than one application to material facts'"), the Court may

14   consider extrinsic evidence to determine the intent of the parties.  *See Wolf v. Walt Disney Pictures*

15   *& Television*, 162 Cal. App. 4th 1107, 1126 (2008) (stating that "[e]xtrinsic evidence is admissible .

16   . . to interpret an agreement when a material term is ambiguous").  The extrinsic evidence here lends

17   support to the Court's conclusion that the provision is about retention of jurisdiction rather than

18   merely establishing venue.  Ms. Adams states in her reply declaration that she had a conversation

19   with Diane Rolen, counsel for the District about a stipulation for dismissal in this case.  According

20   to Ms. Adams, "I indicated that I would include a specific provision in the Stipulation making clear

21   that this Court retains jurisdiction to enforce the Agreement.  [Ms. Rolen] responded that she

22   assumed Judge Chen would retain jurisdiction for the purpose of enforcing the agreement."  Adams

23   Reply Decl. ¶ 4.  Ms. Rolen, in a declaration of her own, admits to "making an impromptu statement

24   that I thought there was a clause in the settlement agreement regarding enforcement" but claims that

25   she also told Ms. Adams that "Mr. Sturges would need to review the Stipulated Dismissal to see if it

26   met with his approval."  Rolen Decl. ¶ 7 (located at Docket No. 85).  Even if Ms. Rolen told Ms.

27   Adams that she needed Mr. Sturges final sign-off, it is telling that Ms. Rolen did not, at that time,

28   outright object to Ms. Adams's statement that she would include a retention-of-jurisdiction

1    provision.  The fact that Ms. Rolen was not only counsel of record for the District but by her own

2    admission participated in the drafting of the settlement agreement, *see* Rolen Decl. ¶ 2, underscores

3    the problematic nature of her failure to even object to Ms. Adams's statement.  In short, Ms. Rolen's

4    behavior supports this Court's conclusion that, at the time of the settlement agreement, there was an

5    understanding by the parties that the Court would retain jurisdiction for enforcement purposes.

6           Ms. Hawkins is therefore a prevailing party under the IDEA and, as the prevailing party, the

7    Court, "in its discretion, may award [her] reasonable attorneys' fees as part of the costs."  20 U.S.C.

8    § 1415(i)(3)(B)(i).

9    E.      Reasonable Hourly Rate

10          The IDEA provides that attorney's fees and related costs that are awarded "shall be based on

11   rates prevailing in the community in which the action or proceeding arose for the kind and quality of

12   services furnished."  *Id.* § 1415(i)(3)(C) (adding that "[n]o bonus or multiplier may be used").  It

13   further provides that an award of fees and costs should be reduced when "the amount of the

14   attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing

15   in the community for similar services by attorneys of comparable skill, reputation, and experience."

16   *Id.* § 1415(i)(3)(F)(ii).

17          In the instant case, Ms. Hawkins's attorneys are Ms. Adams and Ms. Garcia.  According to

18   Ms. Hawkins, an appropriate hourly rate for Ms. Adams is $390 and an appropriate hourly rate for

19   Ms. Garcia is $280.  *See* Mot. at 9.  The District challenges both of these hourly rates as

20   unreasonable.  According to the District, a more appropriate rate for Ms. Adams is $275-300

21   because "the large bulk of her legal career [was] as an entertainment law/intellectual property

22   attorney."  Sturges Decl. ¶ 4.  As for Ms. Garcia, the District contends that a more appropriate rate is

23   $175-200 because she is a fairly recent graduate from law school (J.D. obtained in 2005), *see* Garcia

24   Decl. ¶ 12, and played "only a support or training role."  Sturges Decl. ¶ 4.

25          1.      No Reduction if Unreasonable Protraction by District

26          As a preliminary matter, the Court takes note that, under the IDEA, it may not reduce a fee

27   award on the basis of an unreasonable hourly rate if it finds that the District "unreasonably

28   protracted the final resolution of the action or proceeding or there was a violation of this section."

United States District Court

For the Northern District of California

1   20 U.S.C. § 1415(i)(3)(G).  Ms. Hawkins contends that the District did in fact unreasonably protract

2   both the administrative proceeding as well as the civil action.  *See* Adams Decl. ¶ 7; Garcia Decl. ¶

3   6.

4       With respect to the administrative proceeding, Ms. Hawkins asserts that the District

5   unreasonably protracted the proceeding by, *e.g.*, failing to participate in an early resolution session

6   within 15 days of the filing of the administrative complaint, seeking a continuance of the mediation,

7   denying each allegation in the administrative complaint, and failing to make any concessions until

8   the third day of the administrative hearing.  *See* Adams Decl. ¶¶ 9-12; Garcia Decl. ¶¶ 6-9.  These

9   arguments are not persuasive.

10      For example, while the IDEA does contain a provision requiring an early resolution session

11  within 15 days of the educational agency's receiving notice of the administrative complaint, the

12  parent and the educational agency may agree to use the mediation process described in § 1415(e)

13  instead.  20 U.S.C. § 1415(f)(1)(B)(i).  It appears that there was a mediation in the instant case.  *See*

14  Adams Decl., Ex. A (billing records) (reflecting that a mediation took place on February 1, 2007).

15      As for the District's request for a continuance of the mediation, there is no evidence in the

16  record that the request was not reasonable.  The declarations from Ms. Hawkins's counsel simply

17  state that, "[o]n December 8, 2006, District counsel requested a continuance of the December 12,

18  2006 mediation date.  The mediation was thereby delayed until February 1, 2007."  Adams Decl. ¶

19  10; *see also* Garcia Decl. ¶ 6 (noting the same).

20      Finally, Ms. Hawkins argues that the District unreasonably protracted the administrative

21  proceeding by denying each allegation in the administrative complaint and failing to make any

22  concessions until the third day of the administrative hearing.[4]  The concessions that were made by

23  the District at the administrative hearing (implicitly in contravention of its earlier denial of Ms.

24  Hawkins's allegations) were (1) "that Student's annual IEP was late, because it was due on

25  September 29, 2006, but was not scheduled until November 13, 2006" and (2) "that it failed to

26  provide Student with SLT from the start of the 2006-2007 SY."  ALJ Decision at 3.

27  _____

28      [4] At the hearing, the District argued that it did make concessions prior to the administrative hearing -- *i.e.*, by making the settlement offer ten days prior to the hearing.

14

United States District Court

For the Northern District of California

1    The Court does not find unreasonable protraction on this basis because the history underlying

2    the case was somewhat complicated (*e.g.*, why the IEP meeting did not take place which the District

3    contends was Ms. Hawkins's fault), and the administrative hearing may well have been the first real

4    opportunity for the District to make its concessions, especially since, for several months, one of the

5    District's main attorneys was ill with cancer and not available.  *See* Garcia Decl. ¶ 7 (stating that, at

6    a hearing in January 2007, counsel for the District requested that the administrative hearing be put

7    off until early April 2007 because of the main attorney's illness).  More important, the District's

8    concessions were limited and resolved only a very small part of the case.  In essence, the District

9    admitted wrongdoing for a six-week period only.  Ms. Hawkins has not made any showing that, had

10   the District made its concessions earlier, the administrative hearing would not have proceeded or

11   that its scope would have been materially affected.  Ms. Hawkins would still have argued, for

12   example, that the Student was denied a FAPE *after* November 13, 2006 -- her major argument.

13   Ms. Hawkins contends still that, regardless of what took place during the administrative

14   proceeding, the District unreasonably protracted the civil action by filing a counterclaim against Ms.

15   Adams in her individual capacity (in addition to her law firm).  *See* Adams Decl. ¶ 13 ("[The

16   District] filed a counter-claim against me in my personal capacity for no articulated reason.").  She

17   also claims that the District's refusal to settle the counterclaim unreasonably protracted the civil

18   action.  *See* Adams Decl. ¶ 13.

19   Ms. Hawkins's arguments are not persuasive.  Simply because the District's counterclaim did

20   not contain any "substantive allegations against [Ms. Adams] in her individual capacity," Docket

21   No. 39 (Order at 14 n.2), does not mean that the District had no reason to sue her in her individual

22   capacity, particularly in light of the ALJ's decision and comments at the administrative hearing.  *See*

23   Def.'s RJN, Ex. B at 310-11 (administrative hearing transcript) (ALJ stating to Ms. Adams that he

24   was troubled that "multiple allegations in the complaint are patently false").  As for the District's

25   refusal to settle the counterclaim, the Court's order dismissing the counterclaim with prejudice

26   reflected that the legal issues involved were not clear-cut.  *See* Docket No. 39 (Order at 10-11 & n.1)

27   (noting that, in *Hensley*, the Supreme Court indicated in dicta that, "even where a plaintiff is

28   partially successful, a defendant may still be able to recover fees on plaintiff's unsuccessful claims

United States District Court

For the Northern District of California

1  under 42 U.S.C. § 1988 if such claims are unrelated to the successful claims and are frivolous"; also

2  noting that the Court had "found no case in which a court has applied the *dicta* . . . of *Hensley* and

3  granted attorney's fees to a defendant in a split victory case").  The District's action did not

4  constitute an unreasonable protraction of this action.

5        Accordingly, the Court finds that the District did not unreasonably protract the administrative

6  proceeding and/or civil action.  Thus, the District may challenge the requested hourly rates as

7  unreasonable.

8        2.   Ms. Adams

9        Ms. Adams received her J.D. in 1986.  *See* Adams Decl. ¶ 22.  Thus, she has been a lawyer

10  for more than twenty years.  Although Ms. Adams did not start her practice specializing in special

11  education until October 2002, *see* Adams Decl. ¶ 30, prior to that date, she was involved in

12  litigation, either as a litigator directly or as in-house litigation counsel.  *See* Adams Decl. ¶¶ 24-28.

13  Notably, Ms. Hawkins has offered declarations from other attorneys that support the requested

14  hourly rate of $390 in light of her experience.  *See* Rosenbaum Decl. ¶ 11 ("Ms. Adams' rate of

15  $390 per hour also appears to be reasonable, given her years of experience."); Sanders Decl. ¶ 8

16  ("Based on my experience and personal knowledge of community rates for attorneys with the like

17  skill and experience, I believe that Ms. Adams' hourly rate of $390 falls within the prevailing rates

18  in the community."); Loughrey Decl. ¶ 7 ("Ms. Adams' rate of $390 per hour . . . appears to be

19  reasonable given her experience.").  The Court finds the requested hourly rate of $390 reasonable for

20  Ms. Adams.

21        3.   Ms. Garcia

22        The hourly rate requested for Ms. Garcia -- *i.e.*, $280 -- is questionable.  As noted above, Ms.

23  Garcia obtained her J.D. in 2005.  *See* Garcia Decl. ¶ 12.  Thus, during the administrative proceeding

24  and the civil action, she was a junior attorney with only one to three years of experience.  Notably,

25  even one of the declarations offered by Ms. Hawkins in support of the hourly rate acknowledges that

26  the $280 hourly rate is higher than that for a person with similar years of experience.  *See*

27  Rosenbaum Decl. ¶ 11 ("Given my understanding of the typical fees charged in this area of law, Ms.

28  Garcia's rate of $280 per hour is slightly higher than the rates at which we would bill for an attorney

United States District Court
For the Northern District of California

1   with two years' experience.").  Furthermore, another declaration submitted by Ms. Hawkins comes

2   from a fifth-year attorney (a partner) at an East Bay law firm that specializes in special education

3   litigation.  That attorney currently charges a rate of $300 per hour, only $20 per hour more for an

4   attorney with more than double Ms. Garcia's experience.  This, too, suggests that the rate of $280 is

5   too high.  *See* Loughrey Decl. ¶ 5 ("As a 5th year attorney, my full rate is $300 per hour.").

6          Ms. Hawkins defends the hourly rate largely on the quantity of work that Ms. Garcia has

7   done during those limited years, noting that she has "represented over seventy children in

8   administrative cases and participated in two administrative hearings."  Garcia Decl. ¶ 13.  But

9   quantity is a different matter from quality.  There is no real evidence what Ms. Garcia's role was in

10  those 70-plus cases.  If, for example, she played only a minor role in the cases, then her experience

11  would generally be similar to that of a typical junior attorney.  Indeed, the only specific evidence

12  about her experience establishes that (1) she participated in two administrative hearings (in what

13  capacity is not clear), *see* Garcia Decl. ¶ 13, and (2) she "acted as lead counsel in [one] case filed

14  against [the District] in late 2007 [which] settled in early 2008."  Adams Reply Decl. ¶ 2.  Notably,

15  "[t]hat matter was resolved short of [an administrative] hearing . . . ."  Adams Reply Decl. ¶ 2.

16         Taking into account the evidence that has been submitted, the Court concludes that an

17  appropriate hourly rate for Ms. Garcia is $250, a rate consistent with a third declaration Ms.

18  Hawkins submitted.  *See* Sanders Decl. ¶ 7 (stating that the rates of junior attorneys during her years

19  at Adams Esq. ranged from $250 to $270); *cf. Pulido v. Rialto Unified Sch. Dist.*, No. EDCV 07-

20  506-VAP (JCRx) (C.D. Cal. May 11, 2008) (Docket No. 31, at 10) (awarding $255 per hour for a

21  2003 law graduate and a 2004 law graduate).

22         In so holding, the Court rejects the hourly rate suggested by the District -- *i.e.*, $175-200.

23  *See* Sturges Decl. ¶ 4.  Contrary to what the District argues, Ms. Garcia was not involved in this

24  particular case for purposes of support or training only.  As reflected in the billing records, Ms.

25  Garcia bore a significant amount of responsibility on the matter.  Nor does the Court put much stock

26  into the fact that counsel for the District charges only $210 per hour for his services.  *See* Sturges

27  Decl. ¶ 3.  As Ms. Hawkins points out, "hourly rates charged to government entity clients are not

28  representative of the prevailing rates in the community since those rates are often pre-negotiated and

reduced with the expectation of repeat business."  Reply at 3 (citing *Pulido*, No. EDCV 07-506-VAP

(JCRx) (Docket No. 31, at 10) (stating that "hourly rates charged to government entity clients are not

representative of prevailing rates in a legal community, because those rates are often reduced with

the expectation of repeat business") and *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996) (noting

that "[p]rivate attorneys hired by a government entity to defend excessive force cases are not in the

same legal market as private plaintiff's attorneys who litigate civil rights cases")).

Based on the billing records, it appears that Ms. Garcia billed 121.95 hours for the

administrative proceeding and 96.01 hours for the civil action -- *i.e.*, a total of 217.96 hours.  With

an hourly rate of $250 instead of $280, the Court shall take a reduction of **$6,538.80** from the fee

request (*i.e.*, 217.96 x $30 = $6,538.80).

4.    Paralegals and Legal Assistants

The District contends that the reasonable hourly rate for work done by nonattorneys in the

Adams law firm should be zero.  According to the District, Ms. Hawkins should not be compensated

for the time spent by paralegals or legal assistants because there is no evidence that the individuals

are paralegals or legal assistants under California law.  *See* Opp'n at 20-21 (citing Cal. Bus. & Prof.

Code § 6450(c)).

The Court rejects this argument.  The District has cited only one district court case stating

that a nonattorney's time is compensable only if he or she holds certain certifications or meets

certain qualifications under state law.  *See I.S. v. Charter Oak Unified Sch. Dist.*, No. CV 05-1427

DSF (RCx) (Docket No. 76).  More important, in *Missouri v. Jenkins*, 491 U.S. 274 (1989), the U.S.

Supreme Court indicated that the phrase "reasonable attorney's fee" as used in 42 U.S.C. § 1988

included not only the work of attorneys but also paraprofessionals and other personnel, including

"secretaries, messengers, librarians, janitors, and others whose labor contributes to the work product

for which an attorney bills her client."  *Id.* at 285.  The Supreme Court went on to say that the work

of such persons should be compensated in the same way that it is compensated in the relevant

market, as measured by the practice of comparable private attorneys in the local community.  *See id.*

at 287 ("[I]f the prevailing practice in a given community were to bill paralegal time separately at

market rates, fees awarded the attorney at market rates for attorney time would not be fully

United States District Court

For the Northern District of California

1  compensatory if the court refused to compensate hours billed by paralegals or did so only at

2  'cost.'").

3         In the instant case, Ms. Hawkins has not -- as the District points out -- provided any specific

4  evidence about what the practice is in the local community.  *See* Adams Reply Decl. ¶ 5 (simply

5  stating that "[o]ur Terms of Engagement with Ms. Hawkins specifically calls for payment of law

6  clerk, paralegal and legal assistant services and sets forth the hourly rate of such fees").  However,

7  from the Court's own experience, the prevailing practice in the local community is to bill

8  paraprofessional time separately at market rates.  *See also Jenkins*, 491 U.S. at 289 (noting that

9  "separate billing appears to be the practice in most communities today").  In other words, the cost of

10  paraprofessionals is not usually absorbed as part of the office overhead reflected in the attorney's

11  billing rate.  Accordingly, the Court shall compensate Ms. Hawkins for the time billed by the

12  nonattorneys in the Adams law firm.  The Court notes the District did not challenge the rates per se

13  charged by the nonattorneys.  It only argued that their fees should not be included at all.  The rates of

14  the paralegals and legal assistants, ranging from $140 to $190, were therefore not specifically

15  contested by the District.

16  F.    Reasonable Number of Hours

17         The District challenges not only the hourly rates requested by Ms. Hawkins as unreasonable

18  but also the number of hours.  Under the IDEA, an award of fees and costs should be reduced when

19  "the time spent and legal services furnished were excessive considering the nature of the action or

20  proceeding."  20 U.S.C. § 1415(i)(3)(F)(iii).

21         The District challenges the billing records of Ms. Hawkins's attorneys on several grounds.

22  First, the District contends that there was inappropriate billing for clerical tasks.  Second, the District

23  argues that the billing records are problematic because many of the entries are vague.  Finally, the

24  District argues that the number of hours billed is excessive because multiple attorneys (*i.e.*, both Ms.

25  Adams and Ms. Garcia) worked on the same task.

26      1.    Billing Judgment

27         Before discussing the specific arguments raised by the District, the Court addresses first the

28  issue of billing judgment.  The Supreme Court has noted that

United States District Court
For the Northern District of California

> [c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. . . . "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

*Hensley*, 461 U.S. at 434.

In the instant case, Ms. Hawkins contends that her attorneys did exercise billing judgment. In her declaration, Ms. Adams claims that, "[i]n recording my time, I have not recorded, and we do not seek, compensation for many tasks and activities. My records for work in this case do not include many telephone conversations, meetings, and emails. Therefore, the actual time I spent on the instant case is more than the time shown on my hourly records." Adams Decl. ¶ 17. Ms. Garcia makes the same claim in her declaration. *See* Garcia Decl. ¶ 10.

However, neither Ms. Adams nor Ms. Garcia attempts to quantify the charges that allegedly were excluded. It is thus difficult for the Court to conclude that billing judgment was in fact exercised, or even properly exercised, as claimed. *Cf.* Schwartz & Kirklin, 2 Section 1983 Litigation, Statutory Attorney's Fees § 4.13, at 219-20 (3d ed.1997) (advising attorneys "to maintain contemporaneous time records of *all* of the time expended in the case and to identify in their fee application not only the hours for which they seek compensation but also the particular hours for which they have chosen, in the exercise of billing judgment, *not* to seek compensation") (emphasis in original).

This problem is compounded by the fact that the billing records do reflect "no charges" for work done by paralegals or legal assistants. It is not clear why it was the practice to account for "no charges" by paralegals and legal assistants, but not the attorneys.

Finally, even for the "no charges" by paralegals and legal assistants, it is questionable whether billing judgment was used since, for the most part, there were "no charges" for work done at the outset of the case only, *i.e.*, early on in the administrative process. *See* Adams Decl., Ex. A (billing records) (reflecting that last "no charge" was dated January 31, 2007, prior to mediation). With very limited exceptions, there were no "no charges" during the civil action at all. *See* Adams

United States District Court

For the Northern District of California

1   Reply Decl., Ex. B (supplemental billing records) (reflecting "no charges" for work that was done on

2   September 25, 2008).

3        Thus, for the reasons stated above, the claim of billing judgment in the instant case is

4   questionable.  The failure to adequately document billing judgment contributes to the 10% reduction

5   discussed below.

6        2.   Clerical Tasks

7        According to the District, some of the work that was billed by Ms. Hawkins's attorneys

8   and/or their supporting staff was entirely clerical in nature.  The Supreme Court has stated that

9   "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who

10  performs them." *Jenkins*, 491 U.S. at 288.  Based on the Court's review of the billing records, there

11  were some clerical tasks that were performed by the paralegals and/or legal assistants but not much.

12  *See* Adams Decl., Ex. A (on August 23, 2007, retrieving and forwarding a message -- 0.10 hours for

13  a total of $16; September 21, 2007, retrieving and forwarding a message -- 0.10 hours for a total of

14  $16; and on September 15, 2008, e-filing -- 0.40 hours for a total of $56); Adams Reply Decl., Ex. B

15  (on October 3, 2008, mailing -- 0.20 hours for a total of $28).[5]  These hours shall be excluded.  Thus,

16  there shall a reduction of **$116** from the fee award.

17       3.   Vague

18       The District argues next that Ms. Hawkins has failed to meet her burden of adequately

19  documenting the hours expended on the case because many of the time entries are too vague.

20  According to the District, greater specificity could have been provided for many of the entries in the

21  instant case -- *e.g.*, specifying what legal research was done, what the subject matter of a telephone

22  call was, and so forth.

23       Under Ninth Circuit law, an attorney "'is not required to record in great detail how each

24  minute of his time was expended.'"  *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004).  Rather, an

25  attorney need only "identify the general subject matter of his time expenditures."  *Trustees of Dirs.*

26  *Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.2d 415, 427 (9th Cir. 2000).  Even

27

28       [5] Total = 0.80 hours.

United States District Court

For the Northern District of California

1    under this liberal standard, the time entries identified by the District are problematic.  Without more

2    specificity about, *e.g.*, what legal research was done or the subject matter of a call, it is difficult for

3    both the District and the Court to evaluate whether the work done was excessive, duplicative, or

4    otherwise unnecessary.  *See Hensley*, 461 U.S. at 434.  Another example of problematic vague

5    entries are those that simply state "[p]rocessing client documents" or something similar.  *See, e.g.*,

6    entries on:  January 20, 2008 (5.50 hours); February 16, 2008 (0.25 hours); July 25, 2008 (0.03

7    hours); July 30, 2008 (0.30 hours); September 15, 2008 (0.10 hours); September 24, 2008 (0.08 and

8    0.10 hours); September 25, 2008 (0.30 hours); October 9, 2008 (0.50 hours); and October 15, 2008

9    (0.10 and 0.20 hours).  *See* Adams Decl., Ex. A (billing records); Adams Reply Decl., Ex. B

10   (supplemental billing records).  The vagueness of these entries is problematic because processing

11   documents could well be a clerical task for which there should not be compensation.  *See* Part II.F.2,

12   *infra*.

13          Ms. Hawkins does not have any real defense for the lack of specificity in the time records.

14   She simply states that, because "attorney billing in special education cases must walk a fine line as

15   bills are customarily disclosed to opposing counsel during the settlement process prior to the

16   conclusion of a case," "[i]t would . . . violate the attorney/client privilege against disclosure if

17   counsel were to provide the level of detail that the District now demands."  Reply at 4.  This excuse

18   is insufficient.  There is no reason why more detailed records would not have been maintained and

19   then redacted for production to opposing counsel if necessary to preserve privileged matters.

20          Thus, arguably, the Court should take an across-the-board reduction from the fee award

21   based on the vagueness problem.  Some courts have taken this very approach.  *See, e.g.*, *Tennessee*

22   *Gas Pipeline v. 104 Acres of Land*, 32 F.3d 632, 634 (1st Cir. 1994) (in case involving fee request

23   pursuant to 42 U.S.C. § 4654, affirming district court's reduction of fees by 30% because, *inter alia*,

24   time entries had descriptions such as "confer with co-counsel," "confer with client," "review

25   materials," "review documents," and "legal research" without any indication of subject matter

26   involved; this made it "impossible for the court to gage whether the task performed was warranted . .

27   . [and] to determine if the time factor allocated was appropriate or excessive"), *superseded by statute*

28   *on other grounds*, *Cohen v. Brown Univ.*, R.I. C.A. No. 92-197, N.H. C.A. No. 99-485-B, 2003 U.S.

United States District Court
For the Northern District of California

1  Dist. LEXIS 12512 (D.R.I. Mar. 31, 2003); *Gonzalez v. Town of Stratford*, 830 F. Supp. 111, 114

2  (D. Conn. 1992) (reducing fee award by 10% because "some of the entries are too vague to enable

3  the court to consider whether the time was reasonably spent" -- *e.g.*, some time entries simply said

4  that an attorney performed "research" or had a "telephone conference" without specifying the issue

5  researched or the subject of the telephone conference).  In the instant case, the Court factors the

6  vagueness of the records in taking a 10% across-the-board deduction discussed below.

7       4.   <u>Multiple Attorneys for Same Task</u>

8       Finally, the District asserts that there should also be a reduction in the number of hours

9  because of duplication -- *i.e.*, multiple attorneys unreasonably performed the same task.  This

10  argument is not without some merit.  There was a substantial number of hours billed in this case

11  (more than 400 hours total), even though the case was not overly complex, which suggests that there

12  was likely some duplication of effort or at least that the number of the hours was excessive.

13  Unfortunately, the Court's ability to assess duplication and/or excessiveness is somewhat hampered

14  by the vagueness in some of the time entries.

15       The Court does make some observations from what it can glean from the records.  According

16  to the District, the Court should make a specific deduction to address the fact that both Ms. Adams

17  and Ms. Garcia appeared at the administrative proceeding.  According to the District, Ms. Garcia's

18  presence there was largely for purposes of training.  The Court does not find this argument

19  persuasive.  The billing records reflect that a substantial part of the work done on the case was

20  performed by Ms. Garcia; thus, her presence at the proceeding was reasonable.

21       However, it is not clear why multiple attorneys were needed, *e.g.*, at the settlement

22  conferences in the federal lawsuit.  There is no real reason why both Ms. Adams and Ms. Garcia

23  needed to be present.  Indeed, that Ms. Garcia was competent to attend the settlement conferences

24  alone is demonstrated by the fact that she appears to have attended the administrative mediation

25  alone (February 8, 2007) and also conducted the pretrial conference for the administrative

26  proceeding on her own (March 19, 2007).  *See* Adams Decl., Ex. A (billing records).  Similarly, it is

27  not clear why multiple attorneys were needed at the initial case management conference on

28  November 21, 2007.  In sum, although the Court does not agree that there was a duplication of effort

23

1   with respect to the administrative hearing, there does appear to be some inefficiencies here based on

2   the total number of hours spent, along with the fact that certain duplication of effort is apparent even

3   from the relatively vague entries.

4         Combined with counsel's failure to adequately document billing judgment and the problems

5   caused by nonspecific entries, the Court shall take a 10% across-the-board deduction to account for

6   these problems -- a deduction well within this Court's discretion. *See Moreno v. City of*

7   *Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (stating that "the district court can impose a small

8   reduction, no greater than 10 percent -- a 'haircut' -- based on its exercise of discretion and without a

9   more specific explanation" as to which fees it thought were duplicative).

10        The Court shall calculate the 10% deduction in Part II.J, *infra*, *i.e.*, after taking into account

11  all specific exclusions that should be made.  This shall ensure that there is no "double-counting"

12  against Ms. Hawkins.

13        5.   Miscellany

14        In addition to the above deductions, the Court shall take further deductions based on the

15  following.

16        First, as noted above, in *Hensley*, the Supreme Court noted that billing judgment means that

17  hours not properly billed to one's client are not properly billed to one's adversary.  *See Hensley*, 461

18  U.S. at 434.  It appears that, in the instant case, the Adams law firm billed for doing bill review.

19  One would not expect a lawyer to charge her client for such a task.  *See* Adams Decl., Ex. A (on

20  January 31, 2007, 0.30 hours for a total of $42, and on September 24, 2008, 0.50 hours for a total of

21  $195).  This shall not be included in the fee award -- *i.e.*, there shall be a reduction of **$237**.

22        Second, there appear to be two mistakes made on the billing records.

23  (1)    Ms. Adams billed twice for appearing at the motion to dismiss the District's counterclaim.

24         *See* Adams Decl., Ex. A (8.00 hours on February 13, 2008, the actual day of the hearing, and

25         8.00 hours on February 14, 2008, the day following the hearing).  Therefore, there shall be a

26         reduction of 8.00 hours at Ms. Adams's rate -- *i.e.*, **$3,120**.

27  (2)    In the supplemental request for fees, *see* Adams Reply Decl., Ex. B, Ms. Hawkins asks for

28         fees incurred on September 24, 2008.  But those fees were already accounted for in the

United States District Court

For the Northern District of California

1   opening motion.  Also, as reflected in the Adams reply declaration, Ms. Hawkins's attorney

2   apparently decided not to charge her client for one of the time entries for September 24,

3   2008.  Therefore, there should be a total reduction of **$727.20** (representing 1.98 hours)  *See*

4   *generally* Adams Reply Decl., Ex. B.

5          Finally, in her reply brief, Ms. Hawkins asks to be compensated for fees that she expects she

6   will incur but has not incurred yet -- *i.e.*, time spent on a motion to dismiss since the District will not

7   sign a stipulation of dismissal.  *See* Adams Reply Decl., Ex. B (estimating that 3.50 hours will be

8   spent on a motion to dismiss and 1.80 hours on a reply brief -- both at Ms. Adams's rate).  Ms.

9   Hawkins has now filed the motion to dismiss but it should not have taken 3.50 hours to prepare; the

10  motion consists of only one paragraph.  Likewise, the time needed for the reply brief should not have

11  been substantial either, as it consists of, in essence, only two pages.  Accordingly, the Court shall

12  make a deduction of 3.00 hours -- *i.e.*, there shall be a reduction of **$1,170** from the fee award (*i.e.*,

13  3.00 x $390 = $1,170).

14  G.     Fees Related to Counterclaim

15         Although the District does not argue that the fees incurred with respect to litigation over the

16  District's counterclaim were excessive, it argues that they should still be excluded for two reasons:

17  (1) because Ms. Hawkins was not a party to the counterclaim and (2) because the District's

18  counterclaim was not frivolous.

19         The Court agrees with the District that attorney time spent defending the counterclaim should

20  be excluded.  As noted above, the District asserted a counterclaim against the Adams law firm and

21  Ms. Adams, not Ms. Hawkins herself.   A motion to dismiss the counterclaim was brought by the

22  law firm and the attorney, *see* Docket No. 22 (motion), which the Court ultimately granted.  *See*

23  Docket No. 39 (order).  Thus, the prevailing party with respect to the counterclaim was not Ms.

24  Hawkins but rather the Adams law firm and Ms. Adams.  As the District argues, the IDEA only

25  provides for fees to be awarded to a prevailing "parent" or to a prevailing "educational agency."  *See*

26  20 U.S.C. § 1415(i)(3)(B)(i).  The statute says nothing about awarding fees to a prevailing *attorney*

27  of a parent.  That Congress could have included such a provision is evident from the fact that the

28  IDEA allows an educational agency to seek fees against the attorney of a parent -- *e.g.*, because the

United States District Court

For the Northern District of California

1   complaint is frivolous. *See id.* § 1415(i)(3)(B)(i)(II).  Where Congress intended to implicate the

2   parent's attorney into the fee statute, it did.  Thus, the absence of a provision shifting fees in favor of

3   the prevailing attorney of a parent is telling.  The text of the statute is dispositive.

4       In her reply brief, Ms. Hawkins argues that the fees related to the counterclaim should still be

5   included because Ms. Hawkins "remained financially responsible for the payment of the legal fees in

6   [the] defense [of the Adams law firm and Ms. Adams]."  Reply at 7.  But there is no evidence of

7   such to support this claim.  Simply because the billing records include the time spent on the

8   counterclaim does not mean that Ms. Hawkins was financially responsible for payment of these fees.

9   Ms. Hawkins represented at the hearing that the engagement letter specified that she would be

10  responsible for any fees incurred in connection with the case.  But the engagement letter is not in

11  evidence.  The only evidence before the Court regarding the terms of the engagement is that Ms.

12  Hawkins had to pay only a $1 retainer fee to obtain the law firm's services and that the rest was on

13  contingency with the Adams law firm bearing the risk of the litigation.  *See* Adams Decl. ¶ 4 ("Our

14  clients pay $1 to retain our services and we depend upon the school districts to pay our fees if -- and

15  only if -- we are successful in the case.").

16      At the hearing, Ms. Hawkins made an additional argument that, even though she had no

17  express authority under the IDEA to support her claim that the fees incurred by her counsel for their

18  own defense, as a matter of policy, they should be awarded.  Otherwise, an educational agency could

19  effectively harass or chill a parent from vindicating her rights under the statute by suing her

20  attorneys without risk of liability should the educational agency lose such claims.  This tactic could

21  chill and deter IDEA suits because attorneys would not be willing to represent parents if they could

22  be sued based on their representation of the parents.  The Court is sympathetic to Ms. Hawkins's

23  concern.  Such suits could well have an unwarranted chilling effect.  *Cf. Taus v. Loftus*, 40 Cal. 4th

24  683, 690 & n.1 (2007) (noting that California legislature enacted certain statutes in response to

25  SLAPPs -- *i.e.*, strategic lawsuits against public participation -- in particular, "'lawsuits brought

26  primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for

27  the redress of grievances").  However, as noted above, this issue is governed by the express

28

**United States District Court**
For the Northern District of California

1    language of the IDEA.  This policy concern must be addressed to Congress given the clarity of the

2    current statute.

3            Moreover, the Court notes the attorney of a parent wrongfully sued by an educational agency

4    is not without a remedy if an educational agency brings a frivolous suit against the attorney.  For

5    example, the parent or attorney might seek fees by asking the presiding judge to issue sanctions

6    pursuant to its inherent authority.  The parent or attorney could also seek monetary sanctions by

7    motion pursuant to Federal Rule of Civil Procedure 11 or 28 U.S.C. § 1927.[6]

8            Accordingly, the Court excludes the following fees from the award.

| 9/23/2007 | LMG | Legal research re counterclaim issues | 2.6 | $650[7] |
| 11/15/2007 | LMG | Legal research re atty fees | 2 | $500 |
| 11/16/2007 | JMA | Preparation of Meet and confer follow-up letter and begin drafting motion to dismiss | 1.7 | $646 |
| 11/16/2007 | JMA | Strategy sessions with potential counsel re District's counter claim | 2.8 | $1,064 |
| 11/16/2007 | LMG | Legal research re Motion to dismiss | 2 | $500 |
| 11/17/2007 | JMA | Legal research and preparation of answer and motion | 2.9 | $1,102 |
| 11/18/2007 | LMG | Draft Motion to Dismiss | 4 | $1,000 |
| 11/19/2007 | JMA | Review and revise motion to dismiss including legal research and consultation with outside counsel | 3.4 | $1,292 |
| 11/19/2007 | JMA | Review and Revise Motion to Dismiss | 3 | $840 |

---

[6] In light of the above, the Court does not address the District's second argument that fees may not be awarded because the counterclaim was not frivolous.  The IDEA reflects that a higher standard for fees is demanded when the prevailing party is the educational agency, not the parent, *see* 20 U.S.C. § 1415(i)(e)(B)(i)(I)-(II) (allowing for fees and costs to a prevailing educational agency when the parent's complaint or subsequent cause of action is, *e.g.*, frivolous, unreasonable, or without foundation or was presented for an improper purpose), but this does not address what the standard would be if the attorney for the parent were the prevailing party.

[7] For Ms. Garcia, the Court applies the $250 hourly rate instead of the $280 hourly rate because the Court has already made a reduction above to account for the excessive $280 hourly rate.

| | | | | |
|---|---|---|---|---|
| 11/20/2007 | LMG | Cont'd revisions - M. to Dismiss | 1 | $250 |
| 11/21/2007 | VRA | Research re Memo of Pts and Auth | 1.25 | $212.50 |
| 11/27/2007 | JXP | Comm. w/ JMA re: motion to dismiss; calendar date | 0.1 | $16 |
| 1/03/2008 | LMG | Draft letter to P. Sturges re Opp error | 0.2 | $50 |
| 1/03/2008 | LMG | Review and analyze D Rolen dec | 1.5 | $375 |
| 1/04/2008 | JMA | Review district opp to motion to dismiss and confer w/LMG re deficiency | 1.5 | $585 |
| 1/04/2008 | LMG | T/c w/ P. Sturges re continuance | 0.1 | $25 |
| 1/04/2008 | LMG | Review and analyze Opposition | 2 | $500 |
| 1/04/2008 | LMG | Retrieve email from R. Bohannon re Opp | 0.2 | $50 |
| 1/07/2008 | LMG | Draft Continuance Stipulation | 0.5 | $125 |
| 1/07/2008 | LMG | T/c w/ P. Sturges re continuance (2x) | 0.1 | $25 |
| 1/07/2008 | LMG | File Stip w/ Court | 0.5 | $125 |
| 1/08/2008 | LMG | Draft, review and revise Stip for record seal | 2 | $500 |
| 1/08/2008 | LMG | T/c w/ EMC clerk re continuance | 0.1 | $25 |
| 1/10/2008 | LMG | Review Order re continuance | 0.2 | $50 |
| 1/17/2008 | LMG | Legal Research re Motion to Dismiss | 2.5 | $625 |
| 1/18/2008 | JMA | Strategy session re: motion to dismiss and note re same | 0.8 | $312 |
| 1/18/2008 | LMG | Legal Research re Motion to Dismiss - Reply | 3 | $750 |
| 1/18/2008 | LMG | Strategy session re Motion to Dismiss & Settlement Conf. Stmt. | 0.8 | $200 |
| 1/21/2008 | LMG | Draft Reply to Dist Opp to Motion to Dismiss | 5 | $1,250 |
| 1/22/2008 | LMG | Review and revise Reply to Opp | 3.5 | $875 |
| 1/25/2008 | LMG | Cont'd revisions Reply | 1 | $250 |
| 1/25/2008 | LMG | Email corr. w/ J. Briggs re: dismissal motion | 0.1 | $25 |

| 1/28/2008 | JMA | Review and revise reply brief and teleconference w/LMG re same | 0.8 | $312 |
|---|---|---|---|---|
| 1/28/2008 | LMG | Finalize and E-file Reply brief | 1.5 | $375 |
| 2/12/2008 | JMA | Review case file and supplemental legal research re: motion to dismiss | 6 | $2,340 |
| 2/12/2008 | LMG | Strategy session w/ JMA re hearing, upload docs and t/c re Parent re same | 1 | $250 |
| 2/13/2008 | JMA | Prepare for, travel to and attend hearing re: motion to dismiss | 8 | $3,120 |
| 2/13/2008 | JMA | Research and prepare letter to district re case filing against JMA | 2.5 | $975 |
| 2/13/2008 | LMG | Travel to and attend Hearing re: Motion to Dismiss | 2.5 | $625 |
| 3/11/2008 | JMA | Rec'v order re motion to dismiss and communication to client and LMG re same | 0.6 | $234 |
| 3/11/2008 | LMG | Retrieve, review and analyze Order re Motion to Dismiss | 1 | $250 |
| **TOTAL** | | | **76.25** | **$23,275.50** |

H.    <u>Settlement Offer</u>

        In addition to contesting the reasonableness of the hourly rates and the number of hours, the

District contends that any fees that were incurred after it made its settlement offer on March 23,

2007, *i.e.*, prior to the administrative hearing, should be excluded.

        As noted above, pursuant to the IDEA,

>        [a]ttorneys' fees may not be awarded and related costs may not be
>        reimbursed in any action or proceeding under this section for services
>        performed subsequent to the time of a written offer of settlement to a
>        parent if --
>
>        (I)      the offer is made within the time prescribed by Rule 68 of the
>                 Federal Rules of Civil Procedure or, in the case of an
>                 administrative proceeding, at any time more than 10 days
>                 before the proceeding begins;
>
>        (II)     the offer is not accepted within 10 days; and

United States District Court

For the Northern District of California

1         (III)     the court or administrative hearing officer finds that the relief
2                           finally obtained by the parents is not more favorable to the
parents than the offer of settlement.

3 20 U.S.C. § 1415(i)(3)(D)(i).

4       In the instant case, it is undisputed that a settlement offer was made by the District. *See*

5 Rolen Decl., Ex. D (settlement offer letter, dated 3/23/2007).  However, it appears that the

6 settlement offer was not timely made pursuant to § 1415(i)(3)(D)(i).  As the provision above

7 reflects, the settlement offer must be made "more than 10 days before the proceeding begins."  20

8 U.S.C. § 1415(i)(3)(D)(i).  Here, the record reflects that the administrative proceeding began on

9 April 2, 2007.  *See* ALJ Decision at 1.  The settlement offer by the District was not made until

10 March 23, 2007 -- *i.e.*, exactly 10 days before the administrative proceeding.  *See N.J. v. Northwest*

11 *R-1 Sch. Dist.*, No. 4:04CV857 RWS, 2005 U.S. Dist. LEXIS 24673, at *32 (E.D. Mo. Oct. 24,

12 2005) (noting that settlement offer was made exactly 10 days before the administrative proceeding,

13 and not more than 10 days as required by the statute).

14       While the settlement offer appears to have been untimely under the IDEA, the Court shall

15 still address the merits of the District's argument, particularly since Ms. Hawkins has not contested

16 the timeliness of the offer.  The Court therefore examines whether the relief finally obtained by Ms.

17 Hawkins was more favorable than the offer of settlement.

18       According to the District, Ms. Hawkins should be barred from receiving fees incurred after it

19 made its settlement offer in March 2007 because the relief she obtained at the administrative level --

20 *i.e.*, 22 hours of compensatory education for the Student -- was less favorable than the terms of the

21 District's settlement offer.  In its March 2007 settlement offer, the District offered to provide the

22 Student with 100 hours of compensatory education (*i.e.*, 40 hours of speech and language and 60

23 hours of educational therapy), as well as four weeks at a special summer camp, and further offered to

24 convene the triennial and annual IEP for the Student within a certain time.  In addition, the District

25 offered to pay $500 in attorney's fees to Ms. Hawkins.  *See* Rolen Decl., Ex. D (settlement offer

26 letter).

27       If the Court were required to compare the results of the administrative proceeding with the

28 settlement offer, there would be little dispute that Ms. Hawkins obtained less favorable relief.

**United States District Court**

For the Northern District of California

1  However, as discussed above, the proper comparison is the ultimate result of the civil action (*i.e.*, the

2  final settlement agreement which received the imprimatur of the Court sufficient to confer prevailing

3  party status) with the settlement offer.  *See* Part II.D., *supra*.

4        With this as the proper point of comparison, the Court cannot conclude that the results of the

5  civil action were less favorable than the settlement offered by the District.  Ms. Hawkins obtained

6  more compensatory education for the Student under the settlement agreement (125 hours of

7  compensatory education) compared to the settlement offer (100 hours).  Although the settlement

8  offer also included four weeks at a special summer camp, the settlement agreement provided for a "a

9  full assessment including the neurological testing recommended by [Ms. Hawkins's] consultant at

10  the administrative hearing."  Mot. at 4.

11        To be sure, the difference between the kinds of relief obtained and offered is like comparing

12  apples and oranges, and so there is some difficulty in evaluating whether this aspect of the

13  settlement agreement was more or less favorable.  Therefore, the Court must determine who bears

14  the burden of proof -- *i.e.*, is it the District's burden to show that the agreement was less favorable or

15  Mr. Hawkins's burden to show that the agreement was more favorable?  In the context of Rule 68,

16  courts have held that it is the burden on the defendant to show that the settlement offer was more

17  favorable than the judgment.  *See Reiter v. MTA N. Y. City Transit Auth.*, 457 F.3d 224, 231 (2d Cir.

18  2005) (stating that, "[i]n determining the value of the relief, the defendant bears the burden of

19  showing that the Rule 68 offer was more favorable than the judgment"); *Milton v. Rosicki, Rosicki &*

20  *Assocs., P.C.*, No. 02 CV 3052 (NG), 2007 U.S. Dist. LEXIS 56872, at *8-9 (E.D.N.Y. Aug. 3,

21  2007) (noting the same); *Jankey v. Beach Hut*, CV 05-3856 SVW (JTLx), 2006 U.S. Dist. LEXIS

22  96365, at *23 (C.D. Cal. Dec. 19, 2006) (noting the same).  As explained in one legal treatise, it is

23  often difficult to compare nonmonetary forms of relief but,

24      [a]s a guiding principle . . . , it would be best to view the defendant as
   having the burden of demonstrating that the offer was superior.

25  Although it is true that the rule itself makes the cost-shifting
   consequences apply unless the judgment is more favorable, suggesting

26  that the burden to show that the judgment is more favorable should be
   on the plaintiff, that wording assumes the comparison is not difficult to

27  make.  Rule 68 is actually a tool for defendant to use, and defendant
   alone determines the provisions of the offer.  Since defendant has

28  drafted those provisions, the courts generally interpret the offer against

1 | defendant.  Consistent with that, the burden should be on defendant to
2 | demonstrate that those provisions are in fact more favorable than what plaintiff obtained by judgment.

3   *Wright*, *et al.*, 12 Fed. Prac. & Proc. Civ. 2d § 3006.1.  The settlement offer provision in the IDEA is

4   modeled on Rule 68, and therefore the Court concludes that the burden is on the District, as the

5   defendant in the case, to show that the settlement agreement was less favorable.  In light of the

6   discussion above, the District has failed to meet that burden.[8]

7       Even if the Court were inclined to find the results of the civil action less favorable than the

8   settlement offer, the District still would not prevail on this issue because, "[n]otwithstanding

9   subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is a

10   prevailing party and who was substantially justified in rejecting the settlement offer."  20 U.S.C. §

11   1415(i)(3)(E).  As Ms. Hawkins contends, she was substantially justified in rejecting the settlement

12   offer because it included only $500 in attorney's fees.  However, as previously noted, by the date of

13   the settlement offer, Ms. Hawkins's attorneys had incurred over $9,000 in fees.  Acceptance of the

14   offer would have required Ms. Hawkins to waive her fee claim for $500.  Her rejection was thus

15   substantially justified.  *Cf. B.L. v. District of Columbia*, 517 F. Supp. 2d 57, 61 (D.D.C. 2007)

16   (concluding that "two plaintiffs, F.M. and A.B., were substantially justified in rejecting the

17   settlement terms, which offered only a small percentage of their claimed expert costs").

18       Defendants contend that Ms. Hawkins's substantial justification argument must be rejected

19   because (1) Ms. Hawkins had "no reasonable basis to expect that she would recover attorney fees"

20   given her conduct, including the assertion of "meritless and false claims"; (2) attorney's fees were

21   "so utterly speculative at the ten day offer juncture that it would be impossible to determine whether

22   any offer in this regard would be favorable to plaintiff"; and (3) attorney's fees should not be a

23   consideration since "the intent of the ten day offer statute is to foster resolution and obtain

---

[8] That the burden is appropriately placed on the District is also supported by the legislative history for the Handicapped Children's Protection Act, the IDEA's predecessor.  *See* 132 Cong. Rec. S. 9277 (1986) (co-sponsor Sen. Simon) (stating that a "court should not . . . enter into difficult attempts to make complex or arbitrary comparisons of different forms of relief" and that, "[f]or a court to deny an award of fees on the basis of a rejection of an offer, it must be *manifestly clear* that the relief offered was as favorable as that obtained") (emphasis added).

1  appropriate services for a student without the need for a hearing, not to ensure payment of attorney

2  fees." Opp'n at 15-16. None of these arguments has merit.

3        First, Ms. Hawkins had a reasonable basis to expect that she would recover at least some

4  fees, as even the District ultimately conceded that it did not hold the IEP meeting on time and should

5  have provided some speech and language therapy. As noted above, a prevailing parent is entitled to

6  reasonable attorney's fees for administrative proceedings under the IDEA. These fees in this case

7  would certainly be more than $500, a nominal sum. Second, attorney's fees were not completely

8  speculative at the time of the settlement offer as it appears that Ms. Hawkins's attorneys kept

9  contemporaneous billing records. *See* Adams Decl. ¶ 17 ("Our method of recording attorneys' fees

10  consists of recording time spent on particular cases as contemporaneously as possible with the actual

11  expenditure of time."). And as noted above, fees incurred in administrative proceedings may be

12  awarded under the IDEA. Finally, the District has cited no authority for its claim that the purpose of

13  the ten-day-offer statute should bar a fee award. Even assuming that the purpose is to encourage

14  settlement and avoid protracted litigation (a fair assumption), *cf.* Fed. R. Civ. P. 68, 1946 advisory

15  committee notes (indicating that is the purpose behind Rule 68 offers), it is not unreasonable for a

16  party to consider the adequacy of attorney's fees offered as a factor in deciding whether to accept

17  where there is a basis for fee-shifting. Notably, under Rule 68, after which § 1415(i)(3)(D)(i) is

18  modeled, a settlement offer must include an offer of "costs then accrued," Fed. R. Civ. P. 68(a),

19  which includes statutory attorney's fees where the statute authorizes fees as part of costs. *See*

20  *Mannick v. Kaiser Found. Health Plan, Inc.*, No. C 03-5905 PJH, 2007 WL 2892647, at *9 (N.D.

21  Cal. Sept. 28, 2007).

22  I.    Unreasonable Protraction

23        The District argues that, even if a reduction based on its settlement offer is not appropriate,

24  there should still be a reduction because Ms. Hawkins and/or her attorneys "unreasonably protracted

25  the final resolution of the controversy." 20 U.S.C. § 1415(i)(3)(F)(i). This argument may be

26  considered since the Court has rejected Ms. Hawkins's contention that the District also unreasonably

27  protracted the final resolution of the case. *See id.* § 1415(i)(3)(G) ("The provisions of subparagraph

28

**United States District Court**
For the Northern District of California

1 (F) shall not apply in any action or proceeding if the State or local educational agency unreasonably

2 protracted the final resolution of the action or proceeding . . . .").

3       The District's contention that Ms. Hawkins and/or her attorneys unreasonably protracted the

4 final resolution of the controversy is based in large part on findings that were made by the ALJ in

5 the administrative proceeding.  For example, the ALJ found that

6                     [t]he District was ready to conduct Student's IEP team meeting no

7                     later than Monday, November 13, 2006, which is about six weeks after
the IEP team meeting was due.  However, Mother unreasonably
refused to attend an IEP meeting, and Mother's attorney unreasonably

8                     insisted that any IEP team meeting must be held after mediation.

9 ALJ Decision at 5.  In addition, the ALJ found that the due process complaint "contains at least four

10 demonstrably false allegations."  ALJ Decision at 10.

11       The District also argues that the final resolution of the controversy was unreasonably

12 protracted because of conduct by Ms. Hawkins's counsel during the administrative proceeding --

13 *e.g.*, providing a written expert report that was clearly untimely, falsely accusing the District of

14 refusing to produce witnesses, falsely accusing the District of not producing a document, and filing a

15 meritless motion to exclude all of the District's exhibits.  *See* Opp'n at 4-6.

16       The District's arguments have merit.  With respect to the ALJ findings, the Ninth Circuit has

17 noted that, under the IDEA, a "court may give less than the usual deference to the administrative

18 hearing officer's findings of fact" but those findings still must be accorded "due weight."  *N.B. v.*

19 *Hellgate Elem. Sch. Dist.*, 541 F.3d 1202 (9th Cir. 2008), *available at* 2008 U.S. App. LEXIS 18865,

20 at *22-23.  Due weight means that "'[t]he court, in recognition of the expertise of the administrative

21 agency, must consider the findings carefully and endeavor to respond to the hearing officer's

22 resolution of each material issue.  After such consideration, the court is free to accept or reject the

23 findings in part or in whole.'"  *Id.* at *23.  "Although the district court 'is free to determine

24 independently how much weight to give the administrative findings' the 'courts are not permitted

25 simply to ignore [them].'  A district court shall accord more deference to administrative agency

26 findings that it considers 'thorough and careful.'"  *L.M. v. Capistrano Unified Sch. Dist.*, 538 F.3d

27 1261 (9th Cir. 2008), *available at* 2008 U.S. App. LEXIS 17634, at *13; *see also Van Duyn v. Baker*

28

United States District Court
For the Northern District of California

1   *Sch. Dist.*, 502 F.3d 811, 817 (9th Cir. 2007) (cautioning that "courts must not 'substitute their own

2   notions of sound educational policy for those of the school authorities which they review'").

3          As noted above, in the instant case, the ALJ made two findings that are relevant here: (1) that

4   Ms. Hawkins and her counsel unreasonably delayed the IEP meeting and (2) that the administrative

5   complaint contained false claims.  In her opposition, Ms. Hawkins fails to address directly the first

6   finding made by the ALJ.  She provides no record evidence undermining the ALJ's finding.

7   Moreover, the first finding by the ALJ is thorough and careful, *see* ALJ Decision at 3-5 (covering

8   history as to why the IEP meeting did not take place by September 29, 2006), and the Court

9   therefore accords it due deference.  Based on the ALJ's finding and Ms. Hawkins's failure to

10  provide any evidence to refute that finding, the Court concludes that Ms. Hawkins and/or her

11  attorneys did unreasonably protract the resolution of the case by unreasonably refusing to attend the

12  IEP meeting.

13         As to the second finding by the ALJ, Ms. Hawkins does address it in her opposition but fails

14  to make a persuasive argument.  For the most part, Ms. Hawkins tries to place the blame on the

15  District, claiming that it should have raised this concern prior to the administrative proceeding.

16  Even if the District should have raised the issue prior to the administrative hearing, that does not

17  mean that Ms. Hawkins is justified in having filed an administrative complaint containing false

18  claims.  Ms. Hawkins also asserts that any factual errors in the complaint were a result of the

19  District's refusal to produce records, but she offers nothing to support this assertion.  Finally, Ms.

20  Hawkins suggests that she should be given leniency for any errors because she "is herself a product

21  of the District's special education program and remains functionally illiterate."  Reply at 6.

22  However, there is no evidence of such before the Court; moreover, the fact is that Ms. Hawkins was

23  represented by counsel.  Given the poor response by Ms. Hawkins in her opposition, and the

24  specificity in the ALJ's decision as to why there were four false allegations in the administrative

25  complaint, the Court again finds that Ms. Hawkins and/or her attorneys unreasonably protracted the

26  resolution of the case on this basis as well.

27         As to the District's remaining examples of how Ms. Hawkins and/or her counsel

28  unreasonably protracted the resolution of the case (*i.e.*, by providing a written expert report that was

United States District Court

For the Northern District of California

1    clearly untimely, falsely accusing the District of refusing to produce witnesses, falsely accusing the

2    District of not producing a document, and filing a meritless motion to exclude all of the District's

3    exhibits), Ms. Hawkins fails to make any argument at all. Accordingly, the Court finds that there

4    was also an unreasonable protraction as to these matters.

5           The question remains what sort of reduction the Court should make based on the conduct

6    discussed above. The District has submitted a declaration from one of its attorneys which provides

7    an estimate as to how much time was spent by the District in responding to certain unreasonable

8    conduct by Ms. Hawkins and/or her counsel. *See* Sturges Decl. ¶¶ 6-10 (stating that he has an

9    hourly rate of $210 and that he spent some 15.5-17.5 hours responding). In the absence of any

10   evidence to the contrary, the Court infers that Ms. Hawkins' attorney spent a similar amount of time

11   on these matters. Accordingly, the Court deducts $5,120, representing 16.00 hours at a blended

12   hourly rate of $320 (*i.e.*, the average of $250 and $390, Ms. Garcia and Ms. Adams's hourly rates).

13          The District's declaration, however, does not include any suggestion as to how to quantify

14   time incurred because of the refusal of Ms. Hawkins and/or her attorneys to participate in the IEP.

15   Thus, there is no evidence as to how many hours, if any, would have been saved had there been a

16   prompt IEP meeting. The Court cannot conclude there would have been a greater likelihood that the

17   issues in the case would have been narrowed as a result. Tellingly, the District's settlement offer in

18   March 2007 was vastly different from what Ms. Hawkins demanded. It appears highly unlikely that

19   the IEP would have obviated the due process hearing and this action.

20          Accordingly, the Court will not deduct any hours on this issue. The deduction for Ms.

21   Hawkins and/or her attorneys' unreasonable protraction comes to **$5,120**.

22   J.    10% Reduction

23          Based on the specific exclusions described above, *see* Part II.E-.I, *supra*, the Court shall take

24   a reduction of $40,304.50.[9] After taking the specific exclusions, the Court then applies the 10%

25   reduction as described in Part II.F.3. This insures against double counting of deductions.

26

27

28          [9] $6,538.80 + 116 + 237 + 3,120 + 727.20 + 1,170 + 23,275.50 + 5,120 = $40,304.50.

United States District Court

For the Northern District of California

1     Ms. Hawkins has sought a total of $142,777.90 in fees and costs.  With the reduction of

2  $40,304.50, that leaves a total of $102,473.40.  Ten percent of that figure is **$10, 247.34**.  Thus, with

3  the 10% reduction, the fee-and-cost award to Ms. Hawkins is **$92,226.06** (*i.e.*, $102,473.40 − $10,

4  247.34 = $92,226.06).

5  K.    <u>Limited Success</u>

6     Finally, the District argues that there should be a further reduction in any fee award based on

7  the limited success achieved by Ms. Hawkins.  The District is correct that the limited success

8  framework, first articulated by the Supreme Court in *Hensley*, applies in IDEA cases.  *See Aguirre v.*

9  *Los Angeles Unified Sch. Dist.*, 461 F.3d 1114, 1121 (9th Cir. 2006) ("hold[ing] that attorney's fees

10  awarded under 20 U.S.C. § 1415 are governed by the standards set forth by the Supreme Court in

11  *Hensley* and its progeny").  However, in its opposition, the District focuses on the limited success

12  that Ms. Hawkins obtained at the administrative level, not the success that Ms. Hawkins obtained in

13  the civil action.  *See* Part II.C, *supra*.

14     In the instant case, Ms. Hawkins obtained, as a result of the settlement agreement, "a full

15  assessment including the neurological testing recommended by Plaintiff's consultant at the

16  administrative hearing, fifty (50) hours of speech and language services and seventy-five (75) hours

17  of tutoring."  Mot. at 4.  This was less than the relief that she had sought.  For example, in her

18  administrative complaint, she asked, *inter alia*, for 300 hours of compensatory education, the

19  production of all of the Student's cumulative school records, and placement of the Student at a

20  different school.

21     But simply because a party obtains less than complete relief does not mean there should

22  necessarily be a deduction.  *See NRDC, Inc. v. Winter*, No. 07-55294, 2008 U.S. App. LEXIS 19620,

23  at *24 (9th Cir. Sept. 16, 2008) ("[T]he fact that a settlement agreement does not encompass all

24  relief requested in the complaint does not preclude a finding that a plaintiff has nevertheless

25  obtained an 'excellent result.'").  The lodestar calculated by the Court above is presumptively

26  reasonable.  *See Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988).  The

27  Ninth Circuit has held that, "in ordinary cases, a plaintiff's 'degree of success' or the 'results

28  obtained' should be adequately accounted for in the lodestar[,] [and] [o]nly in rare or exceptional

United States District Court

For the Northern District of California

1  cases will an attorney's reasonable expenditure of time on a case not be commensurate with the fees

2  to which he is entitled." *Id.* Ultimately, the question of whether there should be a departure from

3  the lodestar turns on whether Ms. Hawkins achieved the central goal of her action against the

4  District. *See Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001). While Ms. Hawkins presented

5  various claims as to how the District had allegedly denied the Student a FAPE, the bottom line is

6  that she sought to obtain for the Student a better educational program designed to meet his unique

7  needs.

8       Furthermore, while a reduction in fees for limited success may be taken in some

9  circumstances even where the plaintiff succeeds on some claims but not others, *see Hensley*, 461

10 U.S. at 435 (stating that, where claims are related, "the district court should focus on the significance

11 of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the

12 litigation"),[10] the Ninth Circuit has held any such deduction must be justified with some specificity.

13 In *Quesada v. Thomason*, 850 F.2d 537, 539-40 (9th Cir. 1988), the court held, "the relief obtained

14 justifies a lower fee if [a] plaintiff[] fail[s] to obtain relief on all claims, and if hours spent on

15 unsuccessful claims were not needed to pursue successful claims." *See Velez v. Wynne*, No.

16 04-17425, 2007 U.S. App. LEXIS 2194, at *5 (9th Cir. Jan. 29, 2007) (stating that "[t]he district

17 court should have enumerated what . . . hours were non-compensable because they were not spent to

18 achieve the result obtained, before calculating the lodestar figure, and then treated that figure as

19 presumptively reasonable").

20      In the case at bar, the District has failed to demonstrate how many hours, if any, of Ms.

21 Hawkins's counsel's time were spent on matters not necessary to pursue the claims on which she

22 succeeded. The District failed to provide any analysis or specific evidence on this point. To be sure,

23 some courts appear to have allowed a generalized percentage reduction on a kind of "gestalt"

24

25      [10] The Court agrees with Ms. Hawkins that it has already held that the various claims she
advanced are related. *See* Docket No. 39 (order). Although this finding was made in the context of the

26 Court's ruling dismissing the counterclaim, the same analysis as to whether the claims are related
applies here. However, simply because the claims are all related does not mean that she is necessarily

27 entitled to all her fees and costs. *See, e.g.*, *Connolly v. National Sch. Bus Serv.*, 177 F.3d 593, 597 (7th
Cir. 1999) (rejecting argument "that percentage reductions beyond the lodestar are impermissible where

28 a plaintiff's claim is based . . . on related factual and legal theories").

United States District Court

For the Northern District of California

1   analysis of limited success.  *See, e.g.*, *Mrs. M. v. Tri-Valley Central Sch. Dist.*, 363 F. Supp. 2d 566,

2   573 (S.D.N.Y. 2005) (in case in which parties entered into a settlement agreement, applying an

3   across-the-board reduction of 50% because "[i]t is impossible to separate out hours expended in

4   pursuit of the issues on which plaintiff prevailed from hours expended in pursuit of other issues that

5   were not reflected in the on-the-record, based on counsel's time records"); *Lathan v. Derwinski*, No.

6   89 C 663, 1991 U.S. Dist. LEXIS 10240, at *9-10 (N.D. Ill. July 18, 1991) (in case in which parties

7   entered into a settlement agreement, taking an across-the-board reduction of 50%; noting that,

8   "[a]lthough the time sheets submitted by Lathan's attorneys do not, and probably could not in any

9   accurate way, distinguish between time spent on successful and unsuccessful claims, we may

10  nevertheless reduce the requested attorney's fees to more accurately reflect Lathan's success").

11  However, the Ninth Circuit appears to require a more specific quantitative analysis in overcoming

12  the presumptive reasonableness of the lodestar.  *See Velez*, 2007 U.S. App. LEXIS 2194, at *5;

13  *Quesada*, 850 F.2d at 539-40.  Indeed, it would seem that most of the time spent in the

14  administrative proceedings and in the case likely focused on whether the District failed to provide

15  the Student a FAPE by not appropriately placing him and providing adequate support -- the claim

16  which provided the basis for relief obtained in the settlement agreement -- as opposed to, *e.g.*, the

17  failure to produce all educational records or provide prior written notice of change of placement, the

18  other claims asserted by Ms. Hawkins which did not yield any particular result.  Absent any showing

19  by the District of time spent by Ms. Hawkins's counsel on unsuccessful claims, this Court has no

20  factual basis for taking deduction based on limited success.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

39

1

### III.    <u>CONCLUSION</u>

For the foregoing reasons, Ms. Hawkins's motion for fees and costs is granted but the Court concludes that the fees sought are not reasonable.  Ms. Hawkins is entitled to an award of $92,226.06.  Ms. Hawkins's motion to dismiss is also granted.

This order disposes of Docket Nos. 60, 66, 77, 82, and 83.


IT IS SO ORDERED.


Dated:  November 20, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge

**United States District Court**
For the Northern District of California

40